W. T. RIDEOUT, ADMINISTRATOR, v. W. H. MARS.

[54 South. 801.]

1. CONTRACTS. *Illegality. Parties pari delicto. Code* 1906, *section* 2600.

The general rule is that where parties are in *pari delicto* the court will lend its aid to neither, but there is a well defined exception to this which is that where the paramount public interest demands it, the court will intervene in favor of one as against the other.

2. CODE 1906, SECTION 2600. *Contracts against public policy.*

Code of 1906, section 2600 providing, "no life insurance agent shall make any contract of insurance or agreement other than such as are expressed in the application and policy, nor shall any agent pay or allow as an inducement to insurance any rebate of premiums payable on the policy," etc. An agreement by an insurance agent to induce insurance that the insured should have all the first premium, except three hundred dollars, the amount of the company's share of the premiums, was illegal as contrary to public policy and without consideration.

3. SAME.

In such case although the parties were *in pari delicto* the agent's administrator could recover the balance of the premium from the insured.

APPEAL from the chancery court of Neshoba county.
HON. J. F. McCOOL, Chancellor.

Suit by W. T. Rideout, as administrator of J. H. Rideout, deceased, against W. H. Mars, to recover the balance of first insurance premium on life insurance policy, written by deceased as agent, for the Union Central Life Insurance Company. From a decree for defendant, complainants appeal.

The facts are fully stated in the opinion of the court.

*Flowers, Alexander & Whitfield,* for appellant.

So then the only question in this case is whether the administrator of the insurance agent is precluded from

making his claim in the courts to recover the balance of this premium when there was an agreement that it should not be paid, such agreement being in violation of law.

Counsel cite two cases. They quote from *Bohn* v. *Lowery,* 77 Miss. 426. In that case a physician, who had no license to practice medicine was suing upon an account for professional services rendered. It was unlawful for one to practice medicine without license. This man had practiced medicine without license so to do and was undertaking to collect compensation for his services.

In *Woodson* v. *Hopkins,* 85 Miss. 171, the second case cited by counsel, there was being carried on a business in which both parties to the suit had been interested which was declared by the court to be an unconscionable business. It was held to be against public policy. One of the parties had appealed to the courts to make the other party account for profits received in the conduct of the business.

In both the above cases the well recognized rule was followed that "a contract founded upon illegal consideration or when made against public policy is void, and no action can be maintained thereon." But in both these cases the claim which was attempted to be prosecuted grew out of an illegal contract and was based upon an illegal contract. The party making the claim was entitled to the thing he was asking for, if at all because the other party had promised to pay it under a contract which was held to be void.

In the case at bar, however, no suit is brought upon an illegal contract. We deny that there was any agreement to grant a rebate. We got the policy for Dr. Mars; he has his policy; he has paid only a part of his premium. When we bring a suit for the balance of the premium he undertakes to defend by setting up a contract which he says and which we say was illegal, if any such contract was made. Dr. Mars owes this premium unless

he is relieved of the payment of it by this agreement which he is undertaking to prove. As we have already stated the principle invoked by counsel for appellee would control, if Dr. Mars had paid the entire premium at first and relying upon an agreement to allow a rebate had brought suit against Rideout to get the money back. In such case Mars would have had to defend upon a void agreement. The promise to refund would have been illegal.

*Byrd & Wilson,* for appellee.

It appears in the proof that Rideout solicited this policy and he may have made some deduction or concessions to Mars as to the amount of the first premium in order, as testified about, to get the benefit of this large policy as advertisement to aid him in his business of soliciting insurance in this section. Now, if this court should hold from the testimony that this fact is true then all the law that is written on this subject condemns it and neither Rideout nor his personal agent can be heard now to claim any payment above the amount agreed upon to be paid by Mars for the policy, for the contract is not only in violation of public policy but right in the teeth of the Code of 1906, section 2600, which makes it unlawful for an agent to rebate the premiums on policies in favor of any one, and section 2649 of the Code of 1906 makes it a penal offense to give such rebates and prescribes the punishment.

Complainant in his brief admits that the contract is in violation of public policy, but seeks to evade it by contending that appellee has no lawful right to plead the unlawful act as a defense in this cause, and cites certain authorities to sustain their position which have no application whatever to this case. The doctrine is well settled in this state that every contract in violation of public policy, whether it grows out of violation of the statute or otherwise, is outlawed in both the courts of law and equity. *Bohn* v. *Lowery,* 77 Miss. 426.

ANDERSON, J., delivered the opinion of the court.

This is a bill by the appellant, W. T. Rideout, as administrator of J. H. Rideout, deceased, against the appellee, W. H. Mars; and from a decree in favor of the appellee, the appellant prosecutes this appeal.

The decedent, J. H. Rideout, as agent of the Union Central Life Insurance Company, effected a policy of insurance on the life of the appellee for twenty-five thousand dollars. The policy recites the payment of the first premium of nine hundred and fifty dollars. As a matter of fact, only three hundred dollars of this was paid. The decedent, for the purpose of inducing the appellee to take the insurance, with a view of promoting his own interest as a life insurance agent, by being able to show to others that he had written so large a policy, rebated to the appellee all of the first premium except three hundred dollars, which appellant claims, under his contract of agency with the company, was its share of the premium; the balance being his commission. The appellee and his wife both testified (and the fact is undisputed) that the appellee was to pay and did pay only three hundred dollars of the first premium; the decedent giving him the balance. Cavett, the state agent for the Union Central Life Insurance Company, testified that the first premium was nine hundred and fifty dollars, of which his company's share was three hundred dollars, which had been paid. However, he states, further, that decedent's share of the first premium was only sixty per cent., which is less than the difference between three hundred and nine hundred and fifty dollars. If the decedent was to receive as his commission all of the premium except three hundred dollars, it is evident that it would amount to more than sixty per cent. We are therefore unable, from the record, to reconcile this testimony.

This suit was brought by the administrator of the decedent on the theory that the contract by which decedent rebated to the appellee his interest in the first premium

was void, because without consideration and against public policy.    Section 2600, Code of 1906, is as follows: "No life insurance company doing business in Mississippi shall make any distinction or discrimination in favor of individuals of the same class and equal expectation of life in the amount of payments of premiums or rates charged for policies of life or endowment insurance, or in the dividends and other benefits payable thereon, or in any of the terms and conditions of the contract it makes, nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contracts other than are plainly expressed in the application and policy issued thereon; nor shall any such company or agent pay or allow as inducements to insurance any rebate of premium payable on the policy or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy contract of insurance.    Whenever it shall appear to the satisfaction of the commissioner, after a hearing before him upon notice that any company, officer, agent, subagent, broker or solicitor has violated any provision of this section, he shall revoke the license of any such company or person to transact business in this state, and no other license shall be issued to any such company or person within one year after such revocation."

The legislature, in passing this statute, recognized that a large and increasing proportion of the people of the state carry insurance on their lives, and that the companies engaged in the business of life insurance had been, and would probably continue, discriminating in favor of some of their patrons as against others.    The purpose of the statute, as plainly expressed by its terms, is to secure to all persons equality in the burdens of, as well as in the benefits to be derived from, life insurance. The paramount object is to conserve the public welfare. All persons of the same class and equal life expectancy

are to be treated exactly alike. Their contracts of insurance are to be the same. There is to be no difference, either in their premiums or in their dividends or other benefits. There is to be no contract except that expressed in the face of the application and policy. No reduction or rebate is to be allowed on any premiums. The public interest is made paramount to that of the individual.

The general rule undoubtedly is that where parties are *in pari delicto,* the court will lend its aid to neither. However, there is a well-defined exception to that rule, which is that, where the paramount public interest demands it, the court will intervene in favor of one as against the other. This principle is recognized in *O'Connor* v. *Ward,* 60 Miss. 1025, where the court said: "But upon still another ground the demurrer should have been overruled. The rule appealed to by the defendant, that when parties are *in pari delicto* the court will lend its aid to neither, is subject to the exception that, where public interest requires its intervention, relief will be granted, though the result may be that the property will be resorted to, or a benefit derived by a plaintiff who is in equal guilt with the defendant.

In such cases the guilt of the respective parties is not considered by the court, which looks only to the higher right of the public; the guilty party to whom relief is granted being only the instrument by which the public is served. *St. John* v. *St. John,* 11 Ves. 535; *Hatch* v. *Hatch,* 9 Ves. 292; *Morris* v. *MacCullock,* 2 Eden 190; *Roberts* v. *Roberts,* 3 P. Wms. 65; *Smith* v. *Bromly,* Doug. 695; *Browning* v. *Morris,* Cowp. 790; *Osborn* v. *Williams,* 18 Ves. 379; *W.* v. *B.,* 32 Beav. 574; *Ford* v. *Harrington,* 16 N. Y. 285."

The claim of the appellant is without any merit whatever, morally, because he is seeking to violate a contract made by his decedent. The interest of the general public, however, must prevail, which is that the appellee shall pay the same for his insurance as all others in his

class. The general good permits the estate of the decedent to receive something he was not morally entitled to, rather than appellee shall have insurance at a less premium than the uniform rate. According to the contract of insurance, the first premium was nine hundred and fifty dollars, which is the same rate all others in appellee's class were required to pay. No other contract not expressed in the application or policy could be made. There was no consideration for the decedent's agreement to rebate a part of the premium. When the appellee accepted the policy, by virtue of the statute he agreed to pay, as the first premium, nine hundred and fifty dollars. The law made him agree to pay that, whether he would or not. The courts will not hear any other contract than that written in the face of the application and the policy. The principle involved is analogous to that declared by the Supreme Court of the United States in *T. & P. Ry. Co.* v. *Mugg,* 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011. It was held in that case that a contract between a common carrier and a shipper, by which the former agreed to ship goods for the latter at less than the rate fixed by the Interstate Commerce Commission, was illegal and void, and the carrier could recover from the shipper the difference between such contract rate and the legal rate, notwithstanding the contract, and whether the rate contracted for was known to the parties to be illegal or not. The principles involved in *Bohn* v. *Lowery,* 77 Miss. 426, 27 South. 604, and *Woodson* v. *Hopkins,* 85 Miss. 178, 37 South. 1000, 38 South. 298, 70 L. R. A. 645, 107 Am. St. Rep. 275, relied on by appellee, have no application to the facts of this case.

A decree would be entered here for the appellant, except for the apparent conflict in the testimony as to what was the decedent's share of the premium. That this may be determined, the case is reversed and remanded.

*Reversed and remanded.*