BENE *v.* NEW YORK LIFE INSURANCE COMPANY.

4-4048

Opinion delivered November 25, 1935.

*Isgrig & Robinson,* for appellant.

*Louis H. Cooke* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

MEHAFFY, J. The appellant brought this suit in the Pulaski Circuit Court to recover $1,969, 12 per cent. penalty, and a reasonable attorney's fee, against the appellee. Appellant was the beneficiary in a policy of insurance issued by the appellee, insuring the life of appellant's husband, in the sum of $2,000. The insured died on March 11, 1933, and due notice was furnished the insurance company. There was an indebtedness due the company from the insured in the sum of $85.90, and a dividend due of $55.72, leaving a net indebtedness due the company of $30.18.

The appellee answered denying the material allegations in the complaint. It is agreed that the yearly premiums for the years 1925, 1926 and 1927 were paid in cash, and that the premium due for the year 1928 was paid by a loan on the policy. It is agreed that the premium for 1929 was not paid.

The evidence introduced by appellee tended to show that, when the policy lapsed, there was not sufficient reserve to pay for extended insurance to the insured's death. Evidence was introduced showing that a surrender charge was necessary if the policy was surrendered or lapsed from the third to the ninth years.

The policy contains the following provisions:

"After three full years' premiums have been paid, the insured may, within three months after any default in payment of premium or within thirty days after any anniversary if the policy has become fully paid, surrender the policy, and

"1.  Receive its cash surrender value; or

"2.  Receive the amount of participating paid-up insurance which the cash surrender value at date of default, less any indebtedness hereon will purchase, payable at the same time and on the same conditions as this policy, but without disability or double indemnity benefits.  The insured may at any time obtain a loan on such paid-up insurance, or surrender it for its cash surrender value; or

"3.  If the policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase continued insurance from the date of default for the face of the policy plus any dividend additions and less any indebtedness to the company. The continued insurance shall be without future participation and without the right to loans, cash surrender values, disability or double indemnity benefits.

"The cash surrender value shall be the reserve on the face of the policy at the end of the insurance year or, in event of default, at the date of default (omitting fractions of a dollar per thousand of insurance) and the reserve on any outstanding paid-up additions, plus any dividends standing to the credit of the policy, and less a surrender charge for the third to the ninth years, inclusive, of not more than one and one-half per cent. of the face of the policy.  Such reserve will be computed on the basis of the American Table of Mortality and interest at three per cent., and the amount of paid-up insurance under (2) and the term of the continued insurance under (3) will be computed on the same basis at the attained age of the insured on the date of default.

"The values in the table opposite are computed in accordance with the above provisions, assuming that

premiums have been duly paid for the number of years stated, that there is no indebtedness to the company, no outstanding paid-up additions, and no dividends standing to the credit of the policy; the surrender charge, if any, has been deducted."

It is unnecessary to set out the evidence because there is no dispute about the facts. The only question presented for our consideration is: Was the appellee justified in making a surrender charge in this case?

The policy provides that the cash surrender value shall be the reserve on the face of the policy at the end of the insurance year, or, in the event of default, at the date of default, and the reserve on any outstanding paid-up additions, plus any dividends, standing to the credit of the policy, and less a surrender charge for the third to the ninth years, inclusive, of not more than one and one-half per cent. of the face of the policy. It will be seen that the contract itself provides for a surrender charge. It is agreed that if this surrender charge is a proper charge, and not prohibited by public policy, the insurance was not extended to the time of the insured's death; but that if the surrender charge was prohibited by public policy, the insurance was extended beyond the death of the insured, and appellant would be entitled to recover.

The appellant states that the main question is whether appellee was justified in making a surrender charge in this case. Appellant calls attention to the case of *Security Life Ins. Co.* v. *Watkins,* 180 Ky. 20, 224 S. W. 462. This case was decided by the Supreme Court of Kentucky in 1920. The contention of the insurance company in that case was that the Kentucky statute applied to domestic companies only, and not to foreign corporations. The statute impliedly prevented an insurance company from making a surrender charge. We have no such statute in this State.

Appellant next calls attention to *Boozer* v. *Anderson,* 42 Ark. 167. In that case the note provided that, if it became necessary to collect the note, the maker would pay attorney's fee of 10 per cent. on the amount that should be recovered. The court held that that was

a penalty, and the provisions for attorney's fee was void. The note itself bore 10 per cent. interest, the maximum amount allowed under the Constitution, and it could have been nothing else but a penalty. The court in that case, however, said that, about the validity of such stipulations, there has been and is great diversity of judicial opinion.

The surrender charge in the policy in this case is not a penalty, but it is expressly agreed in the policy that the surrender value shall be the reserve, plus any dividends standing to the credit of the policy, and less a surrender charge for the third to the ninth year, inclusive, of not more than one and one-half per cent. of the face of the policy.

The next case to which appellant calls attention is *United States Life Ins. Co.* v. *Spinks,* 126 Ky. 405, 96 S. W. 889. The opinion in that case also construed a statute, and, after discussing the statute at some length and the facts in the case, the court said: "Having determined to prevent forfeitures, the next step of the Legislature was to provide a plan by which the value of the defaulted policy might be justly and correctly ascertained."

We have no such statute in Arkansas, and the evidence in this case shows that the surrender charge in the contract was a fair and equitable charge. The evidence is given in general terms, statements made as to the cost of procuring the insurance, but there is no evidence tending to show what any of the particular items of cost consist of. But, as we have said, we have no statute here, and the question is whether public policy prohibits the surrender charge.

In 50 C. J. 858, the rule with reference to public policy is stated as follows: "Nevertheless, with respect to the administration of the law, the courts have frequently quoted and often approved of the statement that public policy is that principle of law which holds that 'no one' can lawfully do that which has a tendency to be injurious to the public or against the public good; that rule of law which declares that no one can lawfully do that which tends to injure the public or is detrimental to the public good; the principles under which freedom of contract

or private dealing is restricted by law for the good of the community. 'Public policy' has been said to be synonymous with 'policy of the law,' and also has been defined as 'the public good'."

As to whether a contract is against the public policy is a question of law for the court to determine from all the circumstances of each case. Persons should not be unnecessarily restricted in their freedom to make contracts, and a court will not hold that a contract is void, as being contrary to public policy, unless the contract binds one to do something which is injurious to the public interest. 13 C. J. 427; 6 R. C. L. 707.

The question involved in this case was decided by the court of appeals of the eighth circuit. The court said in that case that the table introduced showed: "The loan and surrender values under this policy shall be upon the Actuaries Table of Mortality with 4 per cent. interest per annum, and the net value thereof is the entire reserve, less not more than 2½ per cent. of the amount insured by the policy." *Inter-Southern Life Ins. Co.* v. *Zerrell,* 58 Fed. (2d) 135.

The court also said in that case: "The policy was an Arkansas contract, and it is conceded that there was no statutory requirement that the insured have the benefit of the entire reserve in case of default in the payment of premiums. Therefore the amount available for the purpose of extended insurance depends upon the terms of the policy."

The court further said in that case: "Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense."

The surrender charge provided for in insurance policies has been discussed and upheld where there was no statute prohibiting such charges, in *Gilley* v. *Mo. State Life,* 116 Tex. 43, 273 S. W. 825; *Erickson* v. *Equitable Life Assurance Society,* 193 Minn. 269, 258 N. W. 736.

We have no statute in this State which prohibits the making of the contract here involved, and it is not

720

prohibited by public policy. The judgment of the circuit court is therefore affirmed.