## New York Life Ins. Co. *v.* Boling *et al.*

(In Banc. Oct. 19, 1936. Suggestion of Error Overruled Nov. 30, 1936.)

[169 So. 882. No. 32085.]

Louis H. Cooke, General Counsel for New York Life Ins. Co., of New York, and Watkins & Eager, of Jackson, for appellant.

174

178

**Alexander & Satterfield,** of Jackson, for appellees.

180

181

182

185

Argued orally by **W. H. Watkins, Sr.,** and **Mrs. Elizabeth Hulen,** for appellant, and by **James Alexander** and **John Satterfield,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellees brought this action in the circuit court of Hinds county against appellant to recover the face value of a life insurance policy of five thousand dollars, issued by appellant on the life of Byron B. Boling, de-

ceased.  The trial resulted in a judgment in appellees' favor for the amount sued for.  From that judgment appellant prosecutes this appeal.

At the time of the death of the insured, the policy had been in force more than three and less than nine years.  The insured had defaulted in the payment of premiums and had secured a loan on the policy.  The policy contained, among others, this provision: "(c) Cash Surrender Value—If the Policy shall not have been indorsed for Participating Paid-up Insurance, the Insured, within three months after such default, but not later, may surrender this Policy and all claims thereunder and receive its Cash Surrender Value as at date of default less any indebtedness hereon.  The Cash Surrender Value shall be the reserve on the face of Policy at date of default, omitting fractions of a dollar per thousand of insurance, and the reserve on any outstanding dividend additions and any outstanding dividend deposits, and less a surrender charge for the third to the ninth years, inclusive, of not more than one and one-half per cent of the face of the Policy.  The reserve shall be computed on the basis of the American Table of Mortality and interest at 3 per cent."

The policy had not been surrendered.  The questions involved grow out of the provision that in fixing the cash surrender value appellant had the right to deduct therefrom a surrender charge "of not more than one and one-half per cent of the face of the policy."  Appellant deducted the maximum of one and one-half per cent; the cash surrender value was thereby reduced to an amount insufficient to keep the policy in force up to the time of the death of the insured.  If such deduction had not been made it would have been in force.  The precise question is whether or not that provision of the policy is valid and enforceable.

Appellant's evidence showed that this deduction was provided for the following purposes: (1) Repaying ac-

quisition expenses if the policy had not become self-sustaining; (2) paying the costs incident to the physical surrender and cancellation of the policy and issuance of a paid-up policy; and (3) a penalty imposed to prevent a policyholder from withdrawing from the company. It is left entirely to the insurer to determine, without agreement with the insured, whether the policy is self-sustaining, and what the acquisition expenses are, and the amount of penalty to be imposed to prevent the policyholder from withdrawing from the company.

Unless New York Life Insurance Company v. Blaylock, 144 Miss. 541, 110 So. 432, is overruled, the judgment must be affirmed. Appellant argues that the decision of that case is not only contrary to the authorities in this country, but is unsound and ought to be overruled. Even if we regarded the Blaylock decision as unsound, we would be obliged to go further before overruling it and hold that it is mischievous in its operation or effect; because that case has stood in our books as the law for ten years. During this time thousands upon thousands of policies of life insurance have been issued and accepted. To overrule that case would make in a material respect a different contract out of all those thousands of policies as compared with what they were when they were issued and accepted. We do not agree that that decision is unsound, and will now undertake to give some reasons therefor that were not given in the Blaylock Case. Although not mentioned in the Blaylock Case, section 5171 of the Code of 1930 has an important bearing on this case. That statute is in this language: "No life insurance company doing business in Mississippi shall make any distinction or discrimination in favor of individuals of the same class and equal expectation of life in the amount of payments of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any of the terms and conditions of the

contract it makes, nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contracts other than are plainly expressed in the application and policy issued thereon; nor shall such company or agent pay or allow as inducements to insurance any rebate of premium payable on the policy or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy contract of insurance. Whenever it shall appear to the satisfaction of the commissioner, after a hearing before him upon notice that any company, officer, agent, subagent, broker or solicitor has violated any provision of this section, he shall revoke the license of any such company or person to transact business in this state, and no other license shall be issued to any such company or person within one year after such revocation. Provided, however, that nothing in this section shall prevent a company which transacts industrial life insurance on a weekly payment plan from returning to policyholders who have made a premium payment for a period of at least one year the percentage of premium which the company would otherwise have paid for the weekly collection of such premium, nor shall this section be construed to prevent the taking of a bona fide obligation, with legal interest, in payment of any premium.''

It should be borne in mind that under the Constitution the state has the undoubted right to regulate the business of insurance; it has the right to provide the kind and character of insurance contracts that may be made. State v. Alley, 96 Miss. 720, 51 So. 467; General Accident Assurance Co. v. Walker, 99 Miss. 404, 55 So. 51.

Although not decisive of the question here involved, the cases of Cole v. State, 91 Miss. 628, 45 So. 11, and Rideout v. Mars, 99 Miss. 199, 54 So. 801, 35 L. R. A.

(N. S.) 485, Ann. Cas. 1913D, 770, throw light thereon. They both turned upon the construction of the above statute. In the Cole Case the court held that the statute was violated by a stipulation in the policy for the return to the insured of an annual income, however small, during a designated time, although such obligation purported to be based on a valuable consideration. The facts in the Rideout Case were substantially as follows: The deceased, J. H. Rideout, was agent for the Union Central Life Insurance Company; he sold Mars a twenty-five thousand dollar policy in his company, which recited that the first premium of nine hundred fifty dollars was paid, as a matter of fact only three hundred dollars of it was paid; under the contract between the agent and the company that was its share, the balance of it was his; he gave Mars his share of the premium in order to induce him to take the insurance, his idea was that in effecting such a large policy his interest as insurance agent would be promoted; the agent died, his administrator brought suit against Mars for the unpaid premium. Construing this statute the court held that the administrator was entitled to recover; that the agreement was illegal because contrary to the public policy declared by the statute.

The statute not only prohibits unfair discriminations and practices being expressly provided for in the policy, but in addition a fair interpretation of it prohibits any provision so indefinite and uncertain as to allow such discriminations and practices. The provision in question is of the latter character. A fixed per cent. of the face value of the policy is not to be deducted in ascertaining its cash surrender value, but "not more than one and one-half per cent." Within that maximum the insurer is given the right to fix the amount to be deducted.

It is inconceivable that in carrying out the cash surrender value provision of the policy one policy would require any more labor, clerical or otherwise, than any

other policy. Where the policy is not surrendered the cash surrender value constitutes premium and keeps the policy in force a certain length of time, based on the amount of such premium. Under the provision in question the insurer could fix, to a certain extent, the amount of such premium; it could deduct therefrom as a surrender charge any amount from one and one-half per cent. of the face of the policy down to nothing. To that extent the cost of the policy to the insured is left entirely in the discretion of the insurer. The insurer could arbitrarily discriminate between policyholders of the same class. To illustrate: Two risks in the same class, one has a one thousand dollar policy, another has a one hundred thousand dollar policy; on the death of each of them the cash surrender value of his policy, without the deduction of the one and one-half per cent., would have kept it in force, while the deduction would have resulted in neither of them being in force; the insurer does not deduct it as to the one thousand dollar policy, but does as to the one hundred thousand dollar policy; the result, of course, is that the latter is not paid and the former is. That precise discrimination could be made under this policy. Such unfair practices are prohibited by the statute. The premium must be plainly written in the face of the policy. In its last analysis this cash surrender charge is simply a part of the cost of the insurance—premium.

The decisions of the courts of other states to the contrary are not controlling but only persuasive. If they are unsound they are not to be followed.

Affirmed.

**Smith, C. J.**, delivered an opinion specially concurring.

With considerable doubt and hesitation, I concur in the opinion of my affirming associates that the Blaylock Case should not be overruled, and that the clause of the policy in question violates section 5171 of the Code.

One of the appellant's contentions, not discussed in the main opinion, is that the decision in the Blaylock Case was based solely on the face of the policy, and that here the evidence discloses that the term "less a surrender charge" is a technical one peculiar to the life insurance business and is recognized therein as not requiring a physical surrender of the policy; consequently, the Blaylock Case should not control. The consideration of this question is unnecessary, for should the appellant's contention be correct, nevertheless, under section 5171, Code 1930, as here construed, the judgment of the court below must be affirmed.

**McGowen, J.**, delivered a dissenting opinion.

In filing this dissent I shall undertake to avoid an argument in extenso but shall content myself with a statement of the conclusions I have reached.

The main opinion, in effect, holds that the surrender charge of not more than one and one-half per cent. of the face of the policy, provided for in the policy, is not enforceable in this state for two reasons: (1) Because there was no physical, actual surrender of the policy by the insured, as held to be necessary in the case of New York Life Insurance Company v. Blaylock, 144 Miss. 541, 110 So. 432, 433; and (2) without reference to the Blaylock Case, this surrender charge cannot be deducted because it permits the insurer to discriminate between policyholders of the same class, and this is in violation of section 5171, Code of 1930. The effect of the holding of

the main opinion is that, because the surrender charge is not fixed and definite, it cannot be deducted in any event. If the insured elects to take the cash and actually surrenders the policy, this charge may not be deducted, and, likewise, if the insured desires to purchase paid-up insurance.

I am of the opinion that the Blaylock Case, supra, should be overruled, for the reason that the construction placed upon the contract there under consideration is in opposition to the judicial opinion of the country. In the Blaylock Case we said, with reference to a surrender charge:

"We have been unable to find any decision of the question, counsel cite none, and we are therefore left to construe the provisions of the policy from the language used; and after a careful consideration of the proposition we are convinced that the $15 'surrender charge' cannot be collected by the insurance company, because, as we see it, there was no actual surrender of the policy, but the default in the payment of the premium amounted to a mere lapse of the policy, and under the said clause (b) the insurance was automatically extended, or 'the insurance was continued as provided in option (b),' as expressed by the provisions of the policy mentioned, the insured having failed to elect to come under clause (a) or clause (c); therefore no 'surrender charge' could be collected from the amount due the insured on the policy at the time of the lapse, because there was no surrender of the policy.

"We do not understand the provisions of the policy to mean that the $15 'surrender charge' could be retained by the company where the policy merely lapsed, and clause (b) extending the insurance automatically applied. It seems clear to us that this 'surrender charge' can be collected by the company only where the policy is surrendered for cash, as provided in clause (a) or where the insured elects, clause (c), which latter ques-

tion we do not decide, but the surrender charge cannot be retained where the insurance is continued under clause (b) as it was in the case before us.''

Let it be noted that in the Blaylock Case the contract specifically fixed a graduated charge in dollars and cents as the amount of the surrender charge based on the time the policy had remained in force.

On this clause, as to surrender charges in contracts substantially identical with the one before us, the authorities are nearly unanimous that upon the default in the policy the extended insurance, if any, is to be paid for from the cash surrender value less the surrender charge. Carter v. Mutual Benefit Life Ins. Company, 230 Ala. 389, 161 So. 446; Erickson v. Equitable Life Assur. Society, 193 Minn. 269, 258 N. W. 736; Inter-Southern Life Ins. Co. v. Zerrell (C. C. A. 8th), 58 F. (2d) 135; Bene v. New York Life Ins. Co., 191 Ark. 714, 87 S. W. (2d) 979; Moss v. Ætna Life Ins. Co. (C. C. A. 6th), 73 F. (2d) 339; Atlantic Life Ins. Co. v. Pharr (C. C. A. 6th), 59 F. (2d) 1024; Darby v. Equitable Life Assur. Society, 143 La. 757, 79 So. 329.

I cannot understand that section 5171, Code of 1930, has any application to the contract under consideration here. I think the parties had a perfect right to make this contract, and that in the long run it was designed to favor the insured. As the statute has been construed in this case, it will operate to force the insurance companies to fix an arbitrary amount as a surrender charge high enough to protect them and the other policyholders who are interested from loss by reason of the lapse of the policy or the surrender of it in any of the modes set out in the contract. In the last analysis the purpose of the charge is to make available to the insured a certain amount of cash if he desires to surrender the policy, or with which to buy additional paid-up insurance, or, if the insured does not exercise those options, then for the company to automatically extend the insurance. To

my way of thinking, to require the insurance companies to deduct the same amount from a policy which has been in force eight years as it would from one which has been in force four years would be unfair and inequitable, and I do not think the statute ever contemplated the many features of insurance contracts which must be left to calculation.

If the insurer cannot deduct the surrender charge in the contingency here involved, when the amount thereof is fixed for the particular year as in the Blaylock Case, because the insured does not physically surrender the policy, and if, as now decided, the amount of that charge must be definitely fixed in the contract, then the items of expense and loss to the company involved in the surrender charge would in the future be taken care of by the insurer as a deduction originally from the reserve. It is idle to say that it is fair that this charge should be as much in a case where the policy has lapsed after the ninth year as it is after the fourth year. Insurance companies can only earn reserves by keeping policies of insurance in force, and when they lapse, by securing others to pay premiums at immense costs to replace the lapsed policies. In my judgment, the next step would be to apply this statute and say that the person who has paid his premiums for a time exceeding ten years had an unjust discrimination in his favor, if no deduction for surrender charge was made, as against the man who had only paid premiums for four years and was required to pay the surrender charge, and that the amount must be fixed in the contract, or section 5171, Code of 1930, would eliminate the charge. Such a construction of this statute would lead to a destruction of the very basis of these beneficent provisions of insurance contracts which aid those who are so unfortunate as not to be able to pay the premiums on their policies. The mandate of the statute is only to require that all the benefits to accrue thereon shall be plainly set forth in the contract. As il-

lustrated above, according to the main opinion, a man who has paid premiums on his policy ten or more years, so far as class is concerned, is in the same position as the man who has paid only four years. In my opinion, in applying this statute the classification is by the year.

I do not think the many statutes which have been passed in the several states on this subject can be said to be unfair and unjust or discriminatory, as, for instance, article 4732, Revised Civil Statutes of Texas of 1925, wherein a sum not more than two and one-half per cent. of the amount insured by the policy may be deducted. That clause of the statute is the same as that contained in the contract in the case at bar. The calculation of the surrender charge is essential to the ascertainment of the cash surrender value and these calculations are not within the condemnation of our statute.

**Cook, J.**, joins in this dissent.