GOLIGHTLY *et al. v.* NEW YORK LIFE INS. CO.

(Division B.   Oct. 2, 1939.)

[191 So. 111.   No. 33806.]

Alexander & Satterfield, of Jackson, for appellants.

Louis H. Cooke, of New York City, and Watkins & Eager, of Jackson, for appellee.

Argued orally by **John C. Satterfield** for appellant and **W. H. Watkins,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

This appeal is from a decree of the Chancery Court of Hinds County, sustaining a special and a general demur-

rer to a bill of complainant as amended and dismissing the same, in a suit brought by the appellants against the New York Life Insurance Company, a non-resident insurance corporation, and the Jackson-State National Bank, a resident garnishee in equity, seeking to recover on a life insurance policy for the sum of $10,000 issued by the said life insurance company on July 11, 1929, to Byrd Hill Golightly, a resident of Crittenden County, Arkansas, now deceased, which was payable to his estate, and against which policy there was a lien note in the sum of $824.57 at the time of the death of the insured on January 31, 1935.

The policy was permitted by the insured to lapse on October 6, 1933, for the nonpayment of a quarterly premium due on that date, but it was provided by the terms thereof that in the event of default in the payment of a premium after three full years' premiums shall have been paid, there would be certain benefits which should apply.

"(a) Temporary Insurance.—Insurance for the face of the Policy plus any dividend additions and any dividend deposits and less the amount of any indebtedness hereon, shall, upon expiry of the period of grace, be continued automatically as Temporary Insurance as from the date of default for such term as the Cash Surrender Value less any indebtedness hereon will purchase as a net single premium at the attained age of the Insured, according to the American experience table of mortality and interest at 3 per cent. This Temporary Insurance will be without participation in surplus.

"(b) Participating Paid-up Insurance.—Within three months after such default, but not later, the Insured may surrender this Policy and elect in place of such Temporary Insurance to have this Policy indorsed for the amount of Participating Paid-up Insurance which the Cash Surrender Value at date of default less any indebtedness hereon, will purchase as a net single premium at the attained age of the Insured at the date of default ac-

cording to the American experience table of mortality and interest at 3 per cent. The Insured may obtain a loan on such Paid-up Insurance or surrender it within one month after any anniversary for its cash surrender value.

"(c) Cash Surrender Value.—If the Policy shall not have been indorsed for Participating Paid-up Insurance, the Insured, within three months after such default, but not later, may surrender this Policy and all claims thereunder and receive its Cash Surrender Value as at date of default less any indebtedness hereon. The Cash Surrender Value shall be the reserve on the face amount of the Policy at date of default, omitting fractions of a dollar per thousand of insurance, and the reserve on any outstanding dividend additions and any outstanding dividend deposits, an less a surrender charge for the third to the ninth years, inclusive, of not more than one and one-half per cent of the face of the Policy. The reserve shall be computed on the basis of the American experience table of mortality and interest at 3 per cent."

The bill of complaint alleges, in substance, that no election was made by the insured after the policy of insurance lapsed, and within three months after the date of default, such as would have entitled the insured to receive either the participating paid-up insurance provided for under clause (b), or the cash surrender value under clause (c); and that therefore the appellants would be entitled to recover the face amount of the policy, less the amount of indebtedness thereon, on the ground that on the date of default in the payment of premium on October 6, 1933, the cash surrender value of the policy, less any indebtedness thereon, was sufficient as a single premium at the attained age of the insured, according to the American experience table of mortality and interest at 3%, to purchase extended insurance for a period up to and beyond the death of the insured, if the insured company had not deducted from the total reserve, which was due on the said policy at the time it lapsed, a surrender

charge, as provided in clause (a) in arriving at the cash surrender value for the purchase of extended insurance, according to the definition of cash surrender value contained in clause (c) which declares the same to be ''the reserve on the face amount of the policy at date of default, less a surrender charge for the third to ninth years, inclusive, of not more than one and one-half percent of the face of the policy.''

And, the bill of complaint further averred: ''That the said policy of insurance was never actually surrendered by the deceased, Byrd Hill Golightly, to the defendant, New York Life Insurance Company, and the provisions in the said policy attempting to provide for and allow the deduction of the surrender charge are so vague, indefinite, and uncertain that the said provisions are in violation of the statutes of Arkansas and of Mississippi, and said surrender charge should not have been deducted by the defendant.''

The statutes of Arkansas and of Mississippi above referred to in the bill of complaint are Section 7953, Pope's Digest of the Laws of Arkansas, and Section 5171 of the Mississippi Code of 1930. And, while there is some difference in the phraseology of the two statutes, they are identical in substance and meaning in prohibiting discrimination by a life insurance company between individuals of the same class or of equal expectation of life in the amount of payment of premiums, benefits, etc.; and both statutes provide that no life insurance company shall make a contract except such as is plainly expressed in the policy of insurance. In other words, the two statutes are identical except that in certain particulars different language is employed to express the same thought.

The appellants contend that although we have under consideration here a contract of insurance delivered in the State of Arkansas, where the premiums were paid—an Arkansas contract—the decisions of the Supreme Court of Mississippi construing similar provisions in contracts of insurance in the light of our statute, Section

5171 of the Code of 1930, supra, will control for the asserted reason that the Supreme Court of Arkansas has never construed Section 7953 of the Code of Arkansas as applied to the contract provisions here involved. They therefore rely on, as a basis for recovery, the decisions of this Court in the cases of New York Life Insurance Company v. Blaylock, 144 Miss. 541, 110 So. 432; Lamar Life Insurance Company v. Minor, 170 Miss. 223, 154 So. 542; and New York Life Insurance Company v. Boling, 177 Miss. 172, 169 So. 882, 884, 111 A. L. R. 967. It is urged that in the Blaylock case, supra, our Court held that under an option given by a life policy, on default in payment of premium, the policy not being surrendered for cash surrender value or paid-up insurance, and so automatically continued as extended insurance, the "surrender charge" could not be deducted from the reserve, relative to the time that the reserve would continue the policy in force; that in the Minor case, supra, the Court held that the table of guaranteed loan and surrender values contained in the policy then under consideration, did not definitely fix the amounts thereof, but was simply a guarantee that such values would not be less than the amounts stated; and that, likewise, in the case at bar, the table of loan and surrender values contained in the policy is a table of *guaranteed* loan and surrender values; that in the Boling case, supra, where there was no actual surrender of the policy, the Court adhered to the rule announced in the Blaylock case, and then further held that the provision for arriving at the cash surrender value by taking the total reserve under the policy and deducting a surrender charge of "not more than 1½ per cent. of the face of the policy," was unenforcible as being in violation of Section 5171 of the Mississippi Code of 1930, requiring the terms of the contract to be plainly expressed in the policy of insurance, and as permitting the insurer to exercise its own discretion after the death of the insured in determining the amount of the surrender charge, so as to discriminate between policyholders if the insurance company should so desire.

It is true that the terms and provisions of the contract here sued on are similar to those contained in the policy involved in the case of the New York Life Insurance Company v. Boling, supra, and the policy here involved was not actually surrendered to the company, as was not done in the Blaylock and Boling cases; but it is also true that the validity and binding force of the provisions contained in the present contract must be determined by the laws of the State of Arkansas, and that therefore the forgoing decisions of our own Court are not decisive of the question at issue if the Supreme Court of Arkansas has construed and upheld the contract as valid under the statutes and decisions of that state.

In the case of Bene v. New York Life Insurance Company, 191 Ark. 714, 87 S. W. (2d) 979, 980, the Supreme Court of that State had under consideration an insurance policy with a similar provision with reference to the insurance being automatically continued for such period of time as its cash surrender value at date of default, less the amount of any indebtedness thereon, would purchase, and where the cash surrender value was declared in the policy to be the reserve on the face of the policy, less a surrender charge for the third to ninth years, inclusive, of not more than one and one-half per cent of the face of the policy; and in which suit the evidence introduced tended to show that when the policy lapsed, there was not sufficient reserve to pay for extended insurance to the insured's death if the surrender charge was deducted therefrom. In the course of the opinion, the Court used the following language: ''The only question presented for our consideration is: Was the appellee justified in making a surrender charge in this case?'' The Court then proceeded to discuss and apply the provision with reference to extended insurance; and, in our opinion, the only reasonable deduction that can be made from a careful study of the entire decision is that the insured had not availed himself of either of the options to actually surrender the policy and receive its cash surrender

value or the paid-up insurance therein provided for, and that the beneficiary was suing on the theory that the extended insurance kept the policy in full force beyond the death of the insured, unless a surrender charge was proper under such circumstances. The Court further observed that: "It will be 'seen that the contract itself provides for a surrender charge. It is agreed that if this surrender charge is a proper charge, and not prohibited by public policy, that the insurance was not extended to the time of the insured's death; but that if the surrender charge was prohibited by public policy, that the insurance was extended beyond the death of the insured, and appellant would be entitled to recover."

In that case, the appellant, Bene, invoked the decisions of the Supreme Court of Kentucky in the cases of Security Life Insurance Company v. Watkins, 189 Ky. 20, 224 S. W. 462; and United States Life Insurance Company v. Spinks, 126 Ky. 405, 96 S. W. 889-895, 103 S. W. 335, 13 L. R. A., (N. S.), 1053. These decisions construed a Kentucky statute, and the Arkansas Court stated in its opinion in the Bene case, supra, that "the [Kentucky] statute impliedly prevented an insurance company from making a surrender charge. We have no such statute in this state." The opinion further reads:

"The question involved in this case was decided by the Court of Appeals of the Eighth Circuit. The court said in that case that the table introduced showed: 'The loan and surrender values under this policy shall be based upon the Actuaries' Table of Mortality, with four (4) per cent. interest per annum, and the net value thereof is the entire reserve, less not more than two and one-half (2½) per cent. of the amount insured by the policy.' Inter-Southern Life Ins. Co. v. Zerrell, 58 F. (2d) 135, 136.

"The court also said in that case: 'The policy was an Arkansas contract, and it is conceded that there was no statutory requirement that the insured have the benefit of the entire reserve in case of default in the payment

of premiums. Therefore the amount available for the purchase of extended insurance depends upon the terms of the policy.'"

In concluding the opinion in that case, the Arkansas Court further stated:

"'We have no statute in this state which prohibits the making of the contract here involved, and it is not prohibited by public policy." The Court was necessarily referring to the provision in that policy which declared the cash surrender value to be the reserve on the face of the policy, less any indebtedness thereon, and less a surrender charge of not more than one and one-half percent of the face of the policy. Moreover, the Court necessarily had in mind the main issue for decision in that case as to whether or not (upon failure of the insured, after default, to surrender the policy to the company and receive either its cash surrender value or paid-up insurance), the beneficiary was entitled to recover on the theory that the cash surrender value was sufficient to purchase extended insurance up to and beyond the death of the insured, unless the surrender charge had been properly deducted, "of not more than one and one-half per cent of the face of the policy," under the clause in that behalf, which is similar to the one involved in the case at bar. In other words, when the Court said that "We have no statute in this state which prohibits the making of the contract here involved," it necessarily upheld the validity of the same provision of the contract under the laws of that state which is now brought into question before us in the present case. It is true that the opinion does not refer to or discuss Section 7953 of the Code of Arkansas, but we must necessarily assume that when the Court said that "We have no statute in this state which prohibits the making of the contract here involved," the decision was reached in the light of the pertinent statutes then in force. We are not justified in holding that the Arkansas Court was simply mistaken as to whether that state had a statute that would render

invalid the contract there sued on, merely because our Court may have taken a different view of the effect of our own similar statute in relation to such a contract made in this state. Section 7953 of Pope's Digest of the Laws of Arkansas had been in force and effect for some time when the Bene case, supra, was decided; and, notwithstanding this statute, the Court said that the state had no statute prohibiting the contract there involved. Presumably the Court made the statement advisedly in the light of its own knowledge of the statutes. It was an unequivocal pronouncement of the law of Arkansas in regard to the legality of a surrender charge under the circumstances disclosed in that case, which appeared to have been the same as here.

Since there is no other Arkansas case holding to the contrary, the Bene case is controlling in the case at bar. Therefore, the decree appealed from must be affirmed.

Affirmed.