ELEOGRAMMENOS *v.* STANDARD LIFE INS. CO. OF THE SOUTH.

*(Nashville*, December Term, 1940.)

Opinion filed March 8, 1941.

H. R. RATCLIFF, of Memphis, for complainant.

MCDONALD, MCDONALD & BROWN and J. A. OSOINACH, all of Memphis, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainant is the beneficiary of a twenty-pay life insurance policy for $2,000 on the life of her husband, who died in October, 1939. The policy was issued in 1920,

He defaulted in payment of his premiums May 28th, 1938, after which no further payments were made. The policy carried the usual non-forfeiture provisions for certain options to the insured, to be exercised within thirty days after default, and conditioned that, if no election was made by the insured within thirty days, the "policy shall become paid-up non-participating life insurance from date of said default as provided in the first option." No option being exercised by the insured, his policy was converted into "paid-up non-participating life insurance," and following his death the sum which the company calculated to be due under this plan was tendered to the beneficiary. It was refused as less than that justly due, and was later paid into court.

This policy had been issued by the Independent Life Insurance Company, which had become insolvent, and its business had been taken over and its life insurance policy contracts assumed by the defendant Standard Life Insurance Company, in 1934.

In computing the amount due the company followed the table set out in the policy, but deducted the amount of a loan which the insured owed the company, and also the sum of $94.23 as a lien thereon, pursuant to the terms of the re-insurance agreement entered into between the Standard Life Insurance Company and the Independent Life Insurance Company.

The cause was heard on the pleadings and a stipulation of facts and the bill dismissed. Complainant appealed.

█ We do not understand that there is any serious dispute between the parties as to the correctness of the calculations involved, but counsel for complainant insists, in substance:

(1) That the cash value at the time of default was, after deducting the loan, interest and lien under the re-insurance agreement, sufficient to have kept the policy in effect for two years, which would have carried it beyond the time of the death of the insured. But, if this be conceded, the insured did not elect this option, which, if he had foreseen his death, he doubtless would have done. And we cannot escape the conclusion that unless he had done so, under the terms of the contract the company was not authorized to make this choice of options for him. This would have required application by the company of the net reserves to payment of premiums. The policy on its face plainly provided, under the subhead "Automatic Premium Loans" that, "On request of the Insured in writing" the company would change the policy from term insurance to a premium-paying basis and would charge premiums as due as loans against the policy, with interest. No such request was made and the company cannot be charged with failure in this regard.

(2) That upon lapse the extended term insurance option should have been applied, which, again, would have kept the policy in force until the death of the insured. Here it becomes material to quote and consider the provisions of the contract, plainly appearing on the face of the policy, setting forth the three options provided upon default:

"Non-Forfeiture Values. If this policy shall lapse because of non-payment of premiums, after two full years' premiums have been paid, the Company will secure to the Insured or assignee a form of insurance the net value of which shall be equal to the reserve on this Policy, less any existing indebtedness to the Company, and less a surrender charge not exceeding 2½ per cent of the

amount insured by this Policy. This non-forfeiture shall be secured to the owner of the Policy in one of the following ways:

"Paid-Up Insurance. First: The issuance of a paid up non-participating Policy payable at death for the amount provided in Column I upon written application therefor by the owner of the Policy and the legal surrender of all claims hereunder to the Company at its Home Office within one month after lapse; or,

"Extended Insurance. Second: The automatic extension of the face amount of the Policy as non-participating term insurance, for such length of time from date of default (Column II) as the then net cash surrender value will purchase at the net single premium rate for the attained age of the Insured at the expiration of which time the insurance shall cease; or,

"Cash Surrender Value. Third: The cash surrender value of the Policy, as stated in the Loan and Cash Surrender Table, will be paid upon legal surrender of the Policy and all claims thereunder to the Company within one month after lapse."

The contention of the beneficiary is that, under these provisions, not paid-up insurance, but extended term insurance, should have been granted. And nothing more appearing, we would agree. But immediately following, in like print and with like red letter subheading, we find the following unequivocal provision:

"Automatic Benefit. If the holder of this Policy makes no election as above provided within 30 days from such default, said Policy shall become paid-up non-participating life insurance from the date of said default as provided in the first option, provided that the Insured has not previously selected the automatic premium loan provision."

It is conceded that the company conformed to this provision. The argument of counsel is that an ambiguity arose from the use of the words "automatic extension" in the foregoing "Extended Insurance" option; that the use of this phrase carried the meaning, despite the express language of the final provision above quoted, that if the insured does nothing, makes no election, upon lapse extended insurance would apply automatically. He urges the well-recognized rule that where ambiguity appears, the doubt must be resolved in favor of the policyholder. We cannot agree that ambiguity appears here. The final clause quoted above is too plain for misunderstanding. We have a case here of "no election," in which case the "Policy shall become paid-up non-participating life insurance from the date of said default as provided in the first option."

(3) Finally, we understand counsel to complain of the deduction of the lien in the amount of $94.23, it being argued that there is no provision for this lien on the face of the policy, and that no notice was otherwise given thereof. As above stated, the policy issued to the insured and sued on in this case was originally issued by the Independent Life Insurance Company which failed, and the obligations arising under this policy were assumed by a re-insurance agreement, executed by the defendant Standard Life Insurance Company in 1934, and the provision for this lien deduction, operative in case the premiums on the policy should not be paid to its maturity, was a part of that insurance agreement. Of course, the Standard Life Insurance Company cannot be held for liabilities and obligations other than those set forth in this agreement, and the obligations which it assumed thereunder are limited by its provisions. The

statutory requirement relied on by counsel, that the policy must contain all of the contract, could have no application to an agreement of this kind, entered into after its issuance and delivery, between the original insurer and a third party. We think there can be no doubt that the company was authorized to make this deduction, in addition to the amount of the loan with interest.

██ ██ There is some suggestion on the briefs that the net amount tendered to the insured, the sum of $232, as the net proceeds of the non-participating insurance into which the original insurance was converted upon default, is not accurate, but we do not understand this insistence to be seriously made, as we have before indicated. As heretofore shown, the premiums on this policy of $2,000 face value were paid for eighteen of the twenty-year term, and it is a matter of regret that a greater sum is not now realizable to the beneficiary therefrom, but it is the duty of the courts to enforce contracts according to their plain terms, and it is not within the power of the courts to give to this beneficiary relief from the effect of the mistake made by the insured in failing to exercise the option, which was plainly reserved to him and under which, in view of his early death, recovery would have been larger.

A motion was made to dismiss the appeal in this case which raised several questions of procedure, which we have found it unnecessary to pass upon in view of the conclusion which we have reached upon the merits, as hereinbefore announced.

The decree of the chancellor must be affirmed.