ANDERSON *v.* NEW YORK LIFE INS. CO.

(In Banc. Feb. 23, 1942. Suggestion of Error Overruled April 27, 1942.)

[6 So. (2d) 293. No. 34776.]

(1)

Alexander & Satterfield, of Jackson, for appellant.

Watkins & Eager, of Jackson, and **F. H. Pease**, of New York, N. Y., for appellee.

6

Argued orally by **John C. Satterfield**, for appellant, and by **W. H. Watkins**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant sued the appellee on a life insurance policy issued by it to her husband, payable to her. The case was tried in the court below without a jury, resulting in a judgment dismissing the action. The policy was issued and delivered to the insured Harry B. Anderson at Memphis, Tennessee, on December 9, 1925. Anderson then lived at Memphis and continued so to do until his death in April, 1935. The appellant also lived in Memphis when the policy was issued and has lived there since continuously. This action was brought in April, 1939, and in its substantive aspects is governed by the law of Tennessee.

Anderson failed to pay the quarterly premium that became due on the policy on September 9, 1934, and the appellant's contention is that the policy did not lapse thereby but was automatically continued in force beyond

the death of the insured by its then cash surrender value under Clause 3 of Section 5 of the policy. That section is as follows:

"Section 5—Surrender Values

"After three full years' premiums have been paid, the Insured may within three months after any default in payment of premium or within thirty days after any anniversary if the Policy has become fully paid, surrender the Policy, and

"(1) Receive its Cash Surrender Value; or

"(2) Receive the amount of participating Paid-up Insurance which the cash surrender value at date of default less any indebtedness hereon will purchase, payable at the same time and on the same conditions as this Policy, but without disability or double indemnity benefits. The Insured may at any time obtain a loan on such paid-up insurance, or surrender it for its cash surrender value; or

"(3) If the policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase Continued Insurance from the date of default for the face of the Policy plus any dividend additions and less any indebtedness to the Company. The Continued Insurance shall be without future participation and without the right to loans, cash surrender values, disability or double indemnity benefits.

"The Cash Surrender Value shall be the reserve on the face of the Policy at the end of the insurance year or, in event of default, at the date of default (omitting fractions of a dollar per thousand of insurance) and the reserve on any outstanding paid-up additions, plus any dividends standing to the credit of the Policy, and less a surrender charge for the third to the ninth years, inclusive, of not more than one and one-half per cent of the face of the Policy. Such reserve will be computed on the basis of the American Table of Mortality and interest

at three per cent, and the amount of paid-up insurance under (2) and the term of the continued insurance under (3) will be computed on the same basis at the attained age of the Insured on the date of default.

"The values in the table opposite are computed in accordance with the above provisions, assuming that premiums have been duly paid for the number of years stated, that there is no indebtedness to the Company, no outstanding paid-up additions, and no dividends standing to the credit of the policy; the surrender charge, if any, has been deducted." (Table of Values above referred to:)

"Table of Guaranteed Surrender Values

| After Policy has been in force | Cash Surrender Value for each $1,000 of the Face Amount | Paid-up Life Insurance for each $1,000 of the Face Amount | Face Amount of the Policy continued for | |
|---|---|---|---|---|
| | | | Years | Days |
| 3 | $ 51 | $ 94 | 3 | 349 |
| 4 | 71 | 130 | 5 | 80 |
| 5 | 96 | 171 | 6 | 191 |
| 6 | 118 | 206 | 7 | 175 |
| 7 | 143 | 245 | 8 | 150 |
| 8 | 168 | 283 | 9 | 65 |
| 9 | 194 | 319 | 9 | 294" |
| Years | | | | |

On through the twenty-fifth year.

As this policy is for $10,000 its cash surrender value at the end of its eighth year, according to this table, was $1,680. Had it remained in force one year longer it would have been $1,940, an increase in value of $260. As the premiums paid on the policy continued it in force to September 9, 1934, three-fourths of its ninth year, the appellee admits that its value on that date was $1,875. This, it will be observed, is the $1,680, its value at the end of the eighth year, plus three-fourths of the $260 it would have increased in value had it remained in force for the whole of the ninth year. After deducting from this $1,875 an indebtedness due the appellee by the insured the re-

mainder was insufficient to carry the policy to the insured's death.

The appellant's only objection to the cash surrender value of the policy admitted by the appellee is that in arriving thereat the appellee wrongfully charged the policy with a surrender charge of $35 and failed to credit it with a dividend then standing to its credit. If both of these contentions are correct the policy was in force at the death of the insured, but if the appellant fails to sustain either of them the cash surrender value of the policy was insufficient to continue it in force to the date of the insured's death.

Since we have arrived at the conclusion that the appellee had the right to deduct this surrender charge in determining the policy's cash surrender value, it will not be necessary for us to set forth the facts on which the second of these contentions is based or to further consider it.

The appellee had adopted the custom of decreasing the surrender charge on its policies each year and imposed none after the ninth year. The charge was deducted in arriving at the table of values set forth in the policy and for the eighth year was $35.

The grounds of the appellant's contention that no surrender charge should have been deducted in determining the value of this policy are, (1) Clause 3 of Section 5 of the policy does not require the surrender of the policy and that a surrender charge can be imposed only when the policy is actually surrendered under a requirement of the policy so to do; and (2) the permission to the company to fix the surrender charge in its discretion at any sum not to exceed one and one-half percent of the face of the policy, enables the insurer to discriminate "between insurants of the same class" and prevents the contract from being "plainly expressed in the policy" in violation of Section 6132 of the 1932 Tennessee Code. That Section is substantially the same as Section 5171 of the Missis-

sippi Code of 1930, and the appellant says that it requires either the exact amount of the surrender charge to be set forth in the policy or the table of values therein to set forth the value of the policy after the surrender charge has been deducted, as this court held that Section 5171, Code of 1930, requires in New York Life Ins. Co. v. Boling, 177 Miss. 172, 169 So. 882, 111 A. L. R. 967; Mutual Life Ins. Co. v. Nelson, 184 Miss. 632, 184 So. 636, 186 So. 837, and New York Life Ins. Co. v. Nessossis, 189 Miss. 414, 196 So. 766, 776.

Clause 3 of Section 5 of the policy does not require the policy to be surrendered but permits the clause to automatically come into operation three months after default in payment of premium, and also expressly permits the deduction of the surrender charge. Such was the case in the policy under consideration in Mutual Life Insurance Co. v. Nelson, supra, wherein this court held that the surrender charge could be deducted when determining the value of the policy at any given time. Such holding seems to be implicit in the Tennessee case of Eleogrammenos v. Standard Life Ins. Co., 177 Tenn. 328, 149 S. W. (2d) 69, but if not there is no Tennessee case to the contrary. We come then to the second of these objections to this surrender charge.

The Tennessee statute now appearing as Section 6179 of the Tennessee Code of 1932, with which the Mississippi Code has no counterpart, prohibits the issuance of a life insurance policy in that state unless it contains, among other things, "a provision which, in event of default in premium payments, after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per centum of the amount insured by

the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy." This policy's method for ascertaining its cash surrender value complies in all respects with this statute. Its designation of the surrender charge is in the statute's language, except that the amount thereof is less than the statute permits an insurer to charge. But if it be said that this section of the Tennessee Code when construed in connection with Section 6132 thereof requires the policy to state not the percent of its face value that the insured may in its discretion charge in arriving at its value, but the exact amount which the insurer intends to charge when determining this value, we must turn to the policy's table of surrender values for the answer thereto.

This table designates these values as "guaranteed surrender values" as did the policies in New York Life Ins. Co. v. Boling, supra (as appears from Mutual Life Ins. Co. v. Nelson, supra), and New York Life Ins. Co. v. Nessossis, supra; but if under the Tennessee statutes and the action of its insurance commissioner these words must be held to be the equivalent of the words "surrender values," and to set forth the value of the policy after the surrender charge had been deducted therefrom, the surrender charge provision therein does not violate Section 6132 of those statutes. Mutual Life Ins. Co. v. Nelson, supra, with which the implications in Eleogrammenos v. Standard Life Ins. Co., supra, are in accord and there seems to be no Tennessee case to the contrary.

The Tennessee Code places insurance companies under the supervision of an insurance commissioner, and provides a much more elaborate scheme therefor than does the Mississippi Code. In addition to the sections of the Tennessee Code hereinbefore cited Paragraph (9) of Section 6179 requires life insurance policies to contain a table setting forth the policy's value each year upon default in premium payments beginning with the year in which such values have become available; and Section

6182 thereof provides that: "No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state until the form of the same has been filed with the commissioner; and after the commissioner shall have notified any company of his disapproval of any form, it shall be unlawful for such company to issue any policy in the form so disapproved. The commissioner's action shall be subject to review by any court of competent jurisdiction." The form of this policy was submitted to and approved by the Tennessee Insurance Commissioner and it could not have been lawfully issued without his approval. In approving it, the commissioner was called on to pass on the questions here presented and necessarily decided that the table of values therein set forth are actual and not mere guaranteed minimum values. This decision of the commissioner was within his delegated authority and assuming that it is subject to review by us, and although Lamar Life Ins. Co. v. Minor, 170 Miss. 223, 154 So. 542; New York Life Ins. Co. v. Boling, and New York Life Ins. Co. v. Nessossis, supra, would have required us to reach a different conclusion had the question been submitted to us in the first instance, we are not prepared to say that his decision is so manifestly wrong that we should not observe it and thereby cast doubt on the meaning of other similar provisions in insurance policies heretofore issued in Tennessee, the ultimate decision of which rests with the Supreme Court of that state. Consequently, we must hold that the table of surrender values in this policy is in the same category as the table thereof in the case of Eleogrammenos v. Standard Life Ins. Co., supra, and Mutual Life Ins. Co. v. Nelson, supra. From which it follows that the judgment of the court below must be affirmed.

Affirmed.

**Roberds, J.,** delivered a dissenting opinion.

Under New York Life Insurance Company v. Blaylock, 144 Miss. 541, 110 So. 432, approved in New York Life Insurance Company v. Boling, 177 Miss. 172, 169 So. 882, 111 A. L. R. 967, the company had no right to deduct the surrender charge in this case, for the simple reason that there was no surrender, or offer of surrender, of the policy, and there is no provision therein automatically surrendering it under the facts of this case. This action is on the policy. as extended insurance.

This language of the court in the Blaylock case is applicable to the case at bar:

"The main question presented on the appeal, which will be decisive of the case, is whether or not the 'surrender charge' of $15 may be deducted by the company from the reserve or cash amount due the insured on the policy at the time of the lapse, or should it be applied in extending the insurance under clause (b) of the provisions, 'Options on Surrender or Lapse,' of the policy, where there has been no actual surrender of the policy, but the insurance is continued under said clause (b) to some future date as provided.

"In the case before us the policy became void several months before the death of the insured if the $15 as a 'surrender charge' could be deducted from the amount due on the policy and not applied to extended insurance; but if the 'surrender charge' of $15 in this case could not be retained by the company, then the insurance for the face amount of the policy was extended to a date after the death of the insured; so the question then is whether the $15 claimed by the company as a 'surrender charge' should be applied to extended insurance under the terms of the policy, or whether the company should be allowed to retain that amount, in which event the policy would have become void before the death of the insured.

"We have been unable to find any decision of the question, counsel cite none, and we are therefore left to con-

strue the provisions of the policy from the language used; and after a careful consideration of the proposition we are convinced that the $15 'surrender charge' cannot be collected by the insurance company, because, as we see it, there was no actual surrender of the policy, but the default in the payment of the premium amounted to a mere lapse of the policy, and under the said clause (b) the insurance was automatically extended, or 'the insurance was continued as provided in option (b),' as expressed by the provisions of the policy mentioned, the insured having failed to elect to come under clause (a) or clause (c); therefore no 'surrender charge' could be collected from the amount due the insured on the policy at the time of the lapse, because there was no surrender of the policy.

"We do not understand the provisions of the policy to mean that the $15 'surrender charge' could be retained by the company where the policy merely lapsed, and clause (b) extending the insurance automatically applied. It seems clear to us that this 'surrender charge' can be collected by the company only where the policy is surrendered for cash, as provided in clause (a) or where the insured elects, clause (c), which latter question we do not decide, but the surrender charge cannot be retained where the insurance is continued under clause (b) as it was in the case before us.

"If the provisions in the policy under the designation 'Options on Surrender or Lapse' can be reasonably construed to mean that when there is a lapse and the insurance is continued under clause (b) that this constitutes a surrender of the policy, or that the intention of the provision is that the lapse and continuance of the insurance shall warrant the charge of the $15 as a surrender or lapse charge, still the other construction that we have above placed upon the provision, namely, that the 'surrender charge' is not to be deducted by the company unless the policy is actually surrendered and not continued

under clause (b) as it is in the case before us, is also a reasonable construction of the provision; and when there are two reasonable constructions of the contract of insurance, one favorable to the insurance company and the other to the insured, it is the duty of the courts to adopt the one favorable to the insured, because the contract is to be construed most strongly against the writer of it. This is the universal rule, as we find it in all jurisdictions. Therefore we think, in the instant case, that the surrender charge cannot be claimed by the insurance company because there was no surrender of the policy; but if mistaken in that view, then it is our opinion that even if the construction contended for by the appellant is a reasonable one, still it is the duty of the court to adopt the other reasonable one favorable to the validity of the policy.''

In the Nelson case [184 Miss. 632, 184 So. 638], cited in the majority opinion, the court drew a distinction between ''The cash surrender value,'' the wording of the policy in the Blaylock case, and ''the cash value,'' the wording in the Nelson case. In the case at bar, the wording is ''Cash Surrender Value,'' as in the Blaylock case.

No Tennessee case has been called to our attention announcing a contrary rule, but, on the other hand, Sugg v. Equitable Life Assurance Society, 116 Tenn. 658, 94 S. W. 936, seems to approve it.

**Anderson, J.**, concurs in this dissent.