McCain *et al. v.* Lamar Life Ins. Co.

(Division B. Feb. 15, 1937. Suggestion of Error Overruled March 15, 1937.)

[172 So. 495. No. 32497.]

Lotterhos & Travis, of Jackson, for appellants.

Wells, Wells & Lipscomb, of Jackson, and **L. A. Smith, Jr.**, of Holly Springs, for appellee.

464

Argued orally by **Fred Lotterhos**, and **Vardaman Dunn**, for appellant, and by **L. A. Smith, Jr.**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On August 30, 1921, appellee life insurance company issued and delivered its policy of insurance, No. 23331, on the life of Mrs. Ruby S. McCain, payable to appellants as beneficiaries. The policy was a 20-pay special coupon premium policy, and was for the nominal face amount of $3,000, but, because of the coupons and the special features of the contract imported therein by the coupons, the actual amounts payable upon death, or on other contingencies or options therein contained, were governed by two detailed tables of guaranteed values which were written into the policy as a particular or special part thereof. All the coupons remained attached and premiums had been paid in full, in cash, and when due for 14 consecutive years, the fourteenth annual premium having been paid on August 30, 1934.

One of the main or principal provisions of the policy, printed at a prominent place on the first page, was and is the following paragraph, together with the heading thereof:

"Paid-Up in Fourteen Years

"If all coupons are attached hereto and the premiums are paid in cash when due for fourteen full consecutive years, the Company will by endorsement hereon con-

tinue this policy as a Paid-up Life Policy for the full face amount without further payment of premiums, provided there is at that time no indebtedness against this policy.''

At the time of the payment of the fourteenth annual premium, Mrs. McCain had determined to avail herself of the quoted paid-up provision, and had communicated her purpose to her brother, who, as it appears by the evidence, attended to such business affairs as she had; but her brother did not proceed further with the matter at that time than a letter of inquiry to the company. When Mrs. McCain received the usual notice from the company of the premium due on August 30, 1935, she again communicated with her brother, who, on August 23, 1935, wrote the company of Mrs. McCain's wish to avail of the quoted provision of the policy. The company, on August 28, 1935, replied to that letter as follows:

"Re: Policy No. 23331—Ruby
S. McCain

"Your letter of August 23rd with reference to the above number Policy has been referred to me for reply.

"Fourteen annual premiums have been paid on Mrs. McCain's Policy and the Policy may be endorsed at this time for Paid-Up Insurance of $3,045.00 subject to the existing loan of $1,127.87. This Option, however, is not automatic, and for this reason we continued to send notice of premiums due after the fourteenth year. If Mrs. McCain selects the Paid-Up Option prior to maturity, it will be necessary for us to have a written Application and an endorsement will be placed on the policy.

"Before Mrs. McCain definitely decides to have the Policy endorsed for Paid-Up Insurance, we should like to call her attention to the several attractive options in the Policy, which are available provided premiums are paid for the full twenty years, and, also, the increase in guaranteed values. For instance—if premiums are paid

for twenty years, all Coupons are left attached, Mrs. McCain would have Paid-up Insurance of $4,590, which is $1,590.00 in excess of the face of the Policy. Although she has an existing loan of $1127.87 against the Policy, she would still have protection for more than the face of the policy.

"On Page One of the Policy you will find there are several attractive options which are available provided premiums are paid for the full twenty years and all coupons are left attached. At the end of twenty years the Insured would have the privilege of selecting the option best suited to her needs at that particular time. We believe that one of the most attractive features of this Policy is the Endowment at 65 option. By this, we mean that if premiums are paid for six additional years, Mrs. McCain would have Paid-up Insurance of $4,590.00, however, on her sixty-fifth birthday should she find that she be in need of cash rather than protection the policy may be surrendered and the face amount less any existing indebtedness would be paid to her in cash. This feature in reality provides for an old age income which often is very desirable.

"If Mrs. McCain definitely decides to have the Policy endorsed for Paid-up Insurance of $3,045.00 subject to the existing loan, if you will let us know, we will be glad to send the proper papers for her signature. We hope, however, that she will decide to continue the Policy until twenty premiums have been paid and thereby avail herself of the several options and privileges available at that time.

"Yours very truly,

"M. Montgomery,
"MM:MF Assistant Secretary."

In response to this letter the company was advised that Mrs. McCain was still desirous of having the policy indorsed for paid-up insurance, and the company prepared and forwarded the application, which was signed by the insured and all the beneficiaries on a date or

dates not stated in the application, but apparently the application was prepared in the office of the company on September 14, 1935. The application now attached to the policy is in the following words and figures:

> "Application for Change in Policy
> "The Lamar Life Insurance Company
> "Home Office, Jackson, Mississippi.
> "Mf—9—14—35

"In the matter of a change in Policy No. 23331 issued by the Lamar Life Insurance Company of Jackson, Mississippi, on the life of Ruby S. McCain of Hopkinsville, Kentucky; the undersigned hereby request the said Company to endorse said Policy for Paid-up Insurance in the amount of Three Thousand and Forty-five Dollars, subject to the conditions of the Policy, without further payment of premiums, subject to the outstanding indebtedness and all increases thereof, and to the provisions of the policy loan contract.

"In consideration of the granting, by the Company of such request, the undersigned agree to comply with all the requirements of the Company with respect to the subject matter of said request, subject to all the conditions and stipulations contained in the original application and policy, except as herein modified.

"Dated at ——— State of ——— this ——— day of ——— 19—

"Signature of the Insured and others interested.

> "1. Mrs. Ruby Seward McCain
> "2. Cecil McCain
> "3. Mrs. Evelyn Dickson
> "4. Miss Celeste McCain
> "5. ———————.

"Witness:
"1. Mrs. Dalgma Francis
"2. ——————
"3. ——————
"4. ——————
"5. ——————"

On September 23, 1935, the insured, being then on a visit to her daughter in Jackson, called at the home office of the company in said city, and, after a discussion of the matter with the vice-president of the company, she delivered the application to the company and the company then and on that day attached to the policy the following document as an indorsement thereon:

"Paid-Up Insurance—Policy No. 23331

"In consideration of the fact that all coupons are on this date attached to Policy No. 23331 in this, The Lamar Life Insurance Company of Jackson, Mississippi, on the life of Ruby Seward McCain, dated August 30, 1921, and in consideration of the further fact that the premiums on said Policy have been heretofore paid in cash for Fourteen full consecutive years, but there is at this date an indebtedness against the Policy due to the Lamar Life Insurance Company in the amount of One Thousand One Hundred Twenty-seven and 87/100 Dollars ($1,127.-87) evidenced by Policy Loan Contract executed by the said Ruby Seward McCain of date August 26, 1931, at the request of the said Ruby Seward McCain and in accordance with the terms of said Policy, the undersigned Lamar Life Insurance Company does by this endorsement to be attached to said Policy continue said Policy for the life risk only as a paid-up Policy in the sum of Three Thousand Forty-five and No/100 Dollars ($3,045.-00) without further payment of premiums but subject to said indebtedness and all increases thereof and to the provisions of said Policy and Policy Loan Contract.

"Dated at the Home Office, Jackson, Mississippi, this the 23rd day of September, 1935.

"The Lamar Life Insurance Company

"By M. Montgomery

"Assistant Secretary."

The policy carried a provision similar to most modern policies in respect to what is called "grace in payment

of premiums." The provision of this policy was and is in the following words: "After this contract has been in force three months, an extension of one month (not less than thirty days) will be allowed in the payment of any premium, and the Company agrees to accept, without further medical examination, any premium, without interest charge, if tendered within one month from due date, during which time the Policy will remain in full force, subject to the deduction of the unpaid premium or any installment thereof, should the Policy become a claim during such period of grace." It will thus be seen that, at the time of the delivery of the application to avail of the "Paid-up-In-Fourteen-Years" option or privilege under the policy and on the date of the quoted indorsement by the company on the policy, the original policy was in full force and effect and for its full amount, and, unless otherwise affected by the indorsement aforesaid, remained in such full force and effect until September 30, 1935.

Mrs. McCain died on September 29, 1935. Except for the transactions resulting in the endorsement aforementioned, the beneficiaries would have been entitled, without question, to a payment of $4,035, as specifically set forth in the table of guaranteed values, less the fifteenth annual premium, and less the debt mentioned in the application and indorsement; and this was the amount which the beneficiaries demanded. They say that the indorsement aforesaid for the lesser sum of $3,045, although made and dated on September 23, 1935, did not become of operative effect until September 30, 1935, and that, if construed to be effective before the latter date, it would, as to the said intervening time, be void for want of consideration.

Appellee contends that by the indorsement of September 23, 1935, there was a surrender of the original policy, and the making of a new contract, and that there was a consideration by way of benefits to the insured which

would serve to make the indorsement aforesaid effective on the date thereof; and, as a first reason for this contention, appellee says that the insured was not entitled to the quoted "Paid-up-In-Fourteen-Years" privilege or option, because that option or privilege contains the express provision that it shall not be available to the insured if at the time there be any indebtedness against the policy. Here it is proper to mention that the policy carried the following paragraph upon the subject of cash loans: "After three full annual premiums have been paid in cash on this Policy, upon proper assignment of the Policy to the Company, with written assent of the person to whom it is payable, the holder hereof shall be entitled to borrow of the Company on the sole security of this Policy, at not exceeding six per cent interest per annum, the amount specified in the table of loan values, according to the number of premiums paid, less any indebtedness to the Company. Failure to repay any such loan or pay interest thereon shall not void the Policy, unless the total indebtedness thereon to the Company equals or exceeds such loan value at the time of such failure. Payment of loans, unless for premiums due the Company, may be deferred ninety days."

Under the quoted provision, which was and is obligatory upon the company, Mrs. McCain, with the written assent of the beneficiaries, took a cash loan of $1,127.87 on August 30, 1931, which was less then, and has at all times since remained less, in amount than the cash or loan value as shown on the table of guaranteed values. The question arises, therefore, whether under section 5171, Code 1930 (section 2600, Code 1906), the provision in the "Paid-Up-In-Fourteen-Years" paragraph to the effect that the privilege thereof shall not be available to one who has borrowed upon the policy is a valid provision, or whether it is void and of no effect.

In Metropolitan Life Ins. Co. v. Lillard, 118 Okla. 196, 248 P. 841, 843, the Supreme Court of Oklahoma ruled

upon this question, and in the opinion quoted the statute of that state, as follows: "No life insurance company, association or corporation doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectation of life in the amount of payment of premium or rate charged for policies of insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract it makes."

It will be observed, by comparison, that the statute there considered is in almost the precise words of our own statute, section 5171, Code 1930 (section 2600, Code 1906). The court held that when, as in the case here before us, the insured has the right to take a loan not exceeding the loan value of the policy at the time, any stipulation or provision in the policy which would deny to the borrower the benefits of other options or privileges which are available to those who have not borrowed is an attempt to make a discrimination against one of a class of insured, and is in violation of the statute. We are in accord with the principles announced in that decision, and we hold that the proviso attached to the concluding portion of the quoted paragraph under the heading "Paid-Up In Fourteen Years" is void as to any loan of less than the guaranteed loan value, and the paragraph will stand under the facts of this case as if the proviso were never written in it. Because of the length of this opinion, we must forego any prolongation of the discussion of this point, but will add that the late decision of this court in New York Life Ins. Co. v. Boling, 169 So. 882, will further disclose the attitude of the court in regard to a firm enforcement of the language and purpose of said section 5171, Code 1930.

Appellee urges as a second reason or ground for the maintenance of its contention that there was a consideration for the indorsement of September 23, 1935, suf-

ficient to make it effective as of that date, in the agreement to carry the loan upon annual interest payments, rather than to declare the loan due, and that there was the further consideration that the company had granted an indulgence in respect to the interest due on August 30, 1935, but which interest had been fully paid to that date. We have already quoted the provision in the policy in respect to cash loans, and now call particular attention to that part thereof which expressly stipulates that "failure to repay any such loan or to pay interest thereon shall not void the policy, unless the total indebtedness thereon to the company equals or exceeds such loan value at the time of the failure." And we have already stated that the loan and interest never at any time equaled the loan value. The term "shall not void the policy" means that no part of the policy shall be void or inoperative, and that, until the indebtedness reaches the point where it equals or exceeds the loan value, the entire policy and all its optional provisions remain in full force. We leave out of consideration the loan agreement made at the time of the loan on August 30, 1931, other than to say that it does not appear that the agreement carried any burdens or restrictions upon the insured contrary to the quoted cash-loan provision of the original policy that were at any time attempted to be enforced or relied on by the company, and further that, if such agreement is to be construed as placing additional burdens or restrictions upon the insured in respect to the cash loan, it would be unenforceable by the company to the extent of such added burdens or restrictions for the want of consideration. The insured had the right to obtain and carry the loan under the provisions of the original policy, and any subsequent agreement by which she would surrender or restrict or abridge those rights or any part thereof must, under familiar and elemental principles, be supported by some consideration other than the mere making of the loan; and no such consideration is anywhere herein suggested as having been given in that regard.

There was no surrender of this policy as understood under the laws of this state, see New York Life Ins. Co. v. Boling, supra, and the case therein reaffirmed; nor was there any novation thereof as contended for by appellee; and this brings us to the main question as to what is the correct interpretation of the quoted 14-year provision for a paid-up life policy. There is no mention in the provision or elsewhere in the policy as to the time when that option shall be exercised and the indorsement made, other than that it shall be after premiums have been paid in cash for 14 full consecutive years. Let us suppose, therefore, that within 60 days after the fourteenth annual premium was paid, the option was exercised and the indorsement made, would the indorsement be effective for the lesser amount at once when made? If so, then the company would be placed in the attitude of retaining the premium which would carry the full insurance to the end of the premium year, and yet, if the death occurred after the date of the indorsement but before the end of the year for which the premium had been paid, the company would pay the indorsed amount, which would be nearly $1,000 less than the insurance which the paid premiums had already bought.

While such a result would at once be said to be unjust and unfair, nevertheless it would have to follow if the policy so specified. But it does not so specify. It does not specify when the application to avail of the said option or privilege shall be made, nor does it specify when the indorsement shall be made or become effective. Constructions of contracts which would make them unfair or unjust are to be avoided unless the terms are unambiguous and express. See, for instance, Grandberry v. Mortgage Bond & Trust Co., 159 Miss. 460, 467, 132 So. 334; Darden v. American Bank & Trust Co., 158 Miss. 742, 751, 130 So. 507. The provision under consideration is that, if all the coupons are attached and the premiums are paid in cash when due for 14 full con-

secutive years, the company will by indorsement on the policy continue it as a paid-up life policy for the amount shown in the table of guaranteed values, without further payment of premiums. As already stated, all the coupons were attached to the policy and the premiums had been paid in cash when due for the 14 full consecutive years; so that, when the fourteenth premium was paid on August 30, 1934, this, of itself, operated to continue the policy in full force for the full amount until September 30, 1935. It was not necessary to the continuance of the policy for the full amount until September 30, 1935, that any indorsement of any kind be affixed to the policy. The indorsement that was placed thereon on September 23, 1935, had no force and exerted no effect towards the continuance of the policy for its full amount until September 30, 1935, for the payment of the fourteenth premium had already done this. There was no ground upon which the indorsement of September 23, 1935, could stand as an efficient continuing force, or of any force whatever, from that date until September 30, 1935; for that ground had already been completely occupied by the payment of the fourteenth premium. The indorsement could not run concurrently with the insurance already paid for, from September 23, 1935, to September 30, 1935, because it had nothing upon which to stand and, consequently, nothing upon which to run, leaving aside the further difficulty that the two could not run concurrently because of their differences in specified amounts payable under each respectively. Since, therefore, the indorsement had no operative or efficient force, no unoccupied ground upon which it could stand until September 30, 1935, the said indorsement must be construed as becoming effective for the paid-up life period on and after September 30, 1935, and not before; from which it follows that the policy was in force for the full amount on September 29, 1935, the date of the death of the insured, and not for only the lesser amount specified in the endorsement.

Moreover, the word "continue" in its ordinary signification in regard to time periods means to prolong or extend from the end of one time to another time, and, since the policy already had a completely operative period of time to which it ran, to wit, to September 30, 1935, as a full policy, the continuance thereof, by indorsement, as a paid-up policy, mentioned in the provision which we are considering, must in consequence mean a continuance immediately from and after the end of the said already completely operative period of time.

The decree will be reversed and the cause remanded, with directions that the proper calculations be made and a decree thereupon entered in accordance with this opinion.

Reversed and remanded.