COMPAÑÍA DE LOS FERROCARILES DE PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, *Respondent.*

No. 56.  Argued June 11, 1945.—Decided January 18, 1946.

*Mariano Acosta Velarde* and *Donald R. Dexter* for petitioner. *Jesús A. González, Acting Attorney General,* and *A. D. Marchand Paz, Assistant Attorney General,* for intervener, Treasurer of Puerto Rico, respondent in the main proceeding.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

We issued the writ in this case to review the decision rendered by the Tax Court of Puerto Rico dismissing the appeal taken by the petitioner, Compañía de los Ferrocarriles de Puerto Rico—hereinafter referred to as the petitioner—from the order of the Treasurer of Puerto Rico assessing and levying on the petitioner a property tax of $156,055.54 for the tax year 1942–43. The facts are as follows:

Under the Act of February 4, 1902 (Laws of 1902, p. 84), the Legislature of Puerto Rico granted the petitioner an exemption from the payment of all taxes for a period of 25 years, provided that it bound itself to transport free of charge during said period the armed forces or members of the Insular Police while in the discharge of their duties. This exemption became effective on March 31, 1902, and expired therefore on March 31, 1927.

On May 7, 1927 (Laws of 1927, p. 606), the Legislature approved Joint Resolution No. 1 (converted into law by the Congress of the United States by virtue of H. R. 10652, approved on June 16, 1938) granting the petitioner an exemption from the payment of all taxes, except the income tax and the amount paid by virtue of the Workmen's Compensation Act, for a period of 15 years "from and after the date of the expiration of the period of exemption" granted by Act of 1902, provided it bound itself, under a written agree-exemption from the payment of all taxes, except the military forces and the members of the Insular Police as well as the troops and equipment of the National Guard of Puerto Rico, the poor insane who were to enter the Insular Insane Asylum, the inmates of the Reform School at Mayagüez and the inmates of the Boys' and Girls' Charity Schools of the Insular Government, the prisoners and the cattle and all other property of the People of Puerto Rico used in the agricultural development of the Island. It was further provided that this exemption should end "when the Public Service Commission declares, after making an investigation of the Compañía de los Ferrocarriles de Puerto Rico, that the capital of the said railroad company, actually invested in the business, shows a liquid profit of at least eight (8) per cent per annum."

The petitioner having complied with the requirements, the new term of exemption granted retroacted to the date of expiration of the former exemption, that is, to March 31, 1927, and continued for 15 years which expired on March 31, 1942.

Now, on July 26, 1921 (Laws of 1921, p. 746), the Legislature enacted Act No. 90 entitled "Authorizing the Commissioner of the Interior to proceed to make a survey of and to construct the necessary railroad lines to join the present public-service lines in the eastern portion of Porto Rico; to

acquire by purchase, lease or eminent domain proceedings any property necessary for the purposes of this Act, and to exempt from taxation any company constructing and operating any section or portion of the railroads specified in this Act, for the purpose of establishing a belt-line railroad.''

According to § 1 of this Act one of the lines that had to be constructed in order to establish the belt-line railroad was the one specified under letter ''A'' described thus:

''A line from the Carolina station of the Compañía de los Ferrocarriles de Puerto Rico, or assignees thereof, to the Mameyes station of the Fajardo Development Company.''

Under § 9 of Act No. 90, *supra,* '' . . . any public-service company constructing and operating any of the lines specified in the aforesaid Section 1 of this Act . . . '' was exempted from the payment of taxes for 10 years.

When in 1925 the construction of the necessary lines to complete the so-called ''belt-line railroad'' had not yet been constructed, the Legislature approved, on July 18, Act No. 49 (Laws of 1925, p. 276), amending §§ 1 and 9 of Act No. 90 of 1921. Section 9, as amended, reads as follows:

''Section 9.—The authorization hereby granted the Commissioner of the Interior to proceed to the construction of the railroad lines enumerated in section 1 of this Act shall not bar the construction and operation of all or any of said railroad lines by any railroad company of a public character which may be willing and in condition to construct all or any of said lines or sections under a franchise granted by the Public Service Commission, provided said franchise is applied for under the plan already established by the Public Service Commission, before the Commissioner of the Interior shall have commenced the construction of the line or lines the construction of which is desired. And to this end the Commissioner of the Interior is hereby empowered at the same time to take such steps as may be necessary to obtain the construction or operation by any public service company of all or any of the railroad sections or lines specified in section 1 hereof; *Provided,* That any public service railroad company *forming or to form part of the belt-line railroad and which is at present exempt from the payment of taxes shall*

*continue exempt from such taxes for ten years more,* except the so called Income Tax, *just as soon as its respective lines shall have been connected with any of the east-end sections specified in paragraphs (a), (b), (c) and (d) of section 1 of this Act; And provided, further,* That any public service railroad company constructing such line or lines as may be necessary to connect with another of the sections specified in section 1 of this Act, or with any belt-line whose present terminal is Carolina or Guayama, shall also be exempt from the aforesaid tax; *And provided, further,* That it shall be the duty of the public service companies and lines exempted from the payment of taxes under this section of this Act, to furnish transportation service *gratis* or free of charge (during the period of exemption) to officers and members of the Insular Police and of the military forces when in uniform and in the performance of official duties, as well as to prisoners and the children of the Asylums, to destitute persons, representatives of beneficent and charitable institutions, and to the insane on their way to the Insular Asylum for the Insane, and they shall also furnish to the Insular Government such other aid as it may demand because the public interest so requires.

"Every public service railroad company granted a franchise under the provisions of the preceding paragraph, shall be bound by the same franchise after the construction of the line or lines to which such franchise refers, to connect the completed section or sections with the tracks of existing public service companies, and to engage in a public freight and passenger transportation service, in combination with the services of existing public service companies with whose lines they connect, and in accordance with such rules as the Public Service Commission may prescribe, and every public service line or lines already existing and in operation included in the general belt-line railroad plan as above described, is hereby obliged to connect with such section or sections of such public service lines as are obliged to connect therewith and which run to any of their terminal lines." (Italics ours.)

In February 1927, the Public Service Commission granted a franchise to the Fajardo Development Company to construct a railroad line between Mameyes and Carolina which was completed on December 1931, and on the 28th of said month and year the petitioner connected its lines at Carolina.

Petitioner's contention is that at the time of making such connection it was exempt from the payment of property taxes by virtue of Joint Resolution No. 1 of 1927 which had extended the period of exemption for 15 years beginning to run on March 31, 1927, and which expired on March 31, 1942, and that it is entitled to enjoy the period of exemption for 10 years more granted under § 9 of Act No. 49 of 1925, *supra,* and, consequently, that it was exempt from the payment of the taxes levied by the Treasurer of Puerto Rico during the year 1942–43 and for all successive years until March 31, 1952.

The Tax Court dismissed petitioner's appeal and upheld the Treasurer on the principal ground that the petitioner failed to construct the Mameyes-Carolina line before the 25-year period of exemption granted under the Act of 1902 expired in 1927, and because it failed to connect its lines to the section constructed by the Fajardo Development Company until December 1931, when said 25 years of exemption had already expired. The court in its opinion construed § 9 as follows:

"It should be well noted that in the case of the 'Compañía de los Ferrocarriles,' which was exempted from the payment of taxes pursuant to the Act of 1925, said company was to continue, or acquire the right to continue, exempted, as soon as, or from the instant that petitioner, *prior to the expiration of the period of exemption for 25 years,* should connect its lines at Carolina or at Guayama to the sections which had to be constructed between Mameyes and Carolina or between Humacao and Guayama. However, any other company which constructed, no matter when, any of the sections specified in § 1 of the Act, would be exempted, for 10 years, from the payment of any property tax." (Italics ours.)

" . . . .If the 'Compañía de los Ferrocarriles' did no wish to lose the benefit of said exemption, the only thing it had to do, if the other companies failed to accomplish it prior to itself, *was to construct that section between Carolina and Mameyes, or between Guayama and Humacao.* But it was not diligent enough. It did not co-operate as was expected with the construction or completion

of the 'belt-line railroad.' It allowed the two remaining years of exemption to elapse.'' (Italics ours.)

■ We do not agree with this limited construction of the scope of § 9, *supra*. The Tax Court limits it, in our opinion without any reason, in so far as petitioner is concerned, to the fact that it was bound to construct the Mameyes-Carolina branch line or to connect its lines to said branch line if it were constructed, as it in fact was by another company, *prior* to March 31, 1927, which was the expiration date of the original period of exemption for 25 years. The first proviso of § 9, *supra,* textually provides that ''any public service railroad company forming or *to form part* of the belt-line railroad and which *is at present exempt* from the payment of taxes *shall continue* exempt from such taxes *for ten years more* . . . just *as soon as* its respective lines *shall have been connected* with any of the east-end sections specified, etc.'' (Italics ours.) There is no limitation of time whatsoever as to when the petitioner had to connect its lines with those of the Mameyes-Carolina section constructed by the Fajardo Development Co. The additional ten years of exemption would begin to run ''as soon as its respective lines shall have been connected'' it at that time the railroad company was already exempt from the payment of taxes, as was undoubtedly the case of petitioner herein by virtue of the additional exemption of 15 years granted to it in 1927 to be counted ''from and after the date of expiration'' of the exemption of 25 years granted in 1902, that is, to be counted from March 31, 1927. At no time from March 31, 1902, until December 28, 1931, on which latter date the connection was made, did the petitioner fail to be exempt from the payment of property taxes. The theory of the lower court to the effect that the exemption granted the petitioner in 1927 is not a continuation of the one granted in 1902, because of the fact that the one of 1927 does not include the amounts paiy by virtue of the workmen's compensation and the income tax, has no merit whatsoever. In 1902 neither of them existed, and, therefore, the Legislature

could hardly exonerate the petitioner from them. Furthermore, the case at bar only deals with the exemption from the payment of property taxes, which exemption is included in both Acts.

It should be further noted that according to § 9, such as it was originally embodied in Act No. 90 of 191, it only exempted from the payment of taxes for 10 years any public service company "constructing and operating" any of the lines specified in § 1 of this Act. When in 1925 said § 9 was amended it not only granted the exemption for ten years to any company which constructed the line or lines specified but it expressly granted an exemption of 10 *more* years to any company "forming or to form part of the belt-line railroad," and it being already exempt it should continue having the benefit of said exemption for said additional period as soon as its lines were connected with any of the east-end sections specified in the Act. This was the reason why the phrase "forming or to form part of the belt-line railroad" was used.

It seems that this has been admitted by respondent tribunal in its opinion but it limits the period ruring which the petitioner could connect its lines or construct new ones to be connected to its respective lines to March 31, 1927, on which date the original exemption for 25 years granted to petitioner expired. As we have already pointed out, there is nothing in the Act to justify such an interpretation of the legislative intent.

On the contrary, if we examine the introductory clauses contained in Joint Resolution No. 1 of 1927, *supra,* we will observe that the following was set forth:

"WHEREAS, the Economic Congress thoroughly discussed this matter and reached the conclusion, after long debate and consideration, that the exemption from taxation already granted to the Compañía de los Ferrocarriles de Puerto Rico, the term of which has already expired, should continue for a term equal to that which it has enjoyed, in order to facilitate its better development for the benefit of public interest . . . "

The Legislature, instead of granting an additional term of exemption for 25 years, as recommended by the Economic Congress, only granted one for 15 years. It is reasonable to infer that this action was due to the fact that, under the Act of 1925, it had already provided that as soon as petitioner constructed new lines or connected them to its lines, it would continue exempted for the more years. In December 1931, when the petitioner connected its lines to those constructed by the Fajardo Development Company, it was exempt and obtained the benefit of continuing exempt for 10 more years after the expiration of the term previously granted.

We can not agree with the conclusion of the respondent tribunal to the effect that even assuming that the petitioner was entitled to the exemption of 10 years granted by the Act of 1925, this period should be counted as concurrent with the one for 15 years granted by Joint Resolution No. 1 of 1927, that is, that it began on December 1931, when petititoner's lines were connected, and that it expired in 1941. By applying this construction to the proviso of § 9, *supra,* the phrase "shall continue exempt from such taxes for ten years more" is entirely disregarded and especially the words "shall continue" and "more".

"*Continuar*" (to continue) means "to prolong what has been begun, to last, to extend." And "*más*" (more) means "In excess of, in a greater quantity, or that which surpasses what is compared with, expressly or impliedly." (*Diccionario de la Lengua Española, Academia Española, 16th ed.*)

In *McCain* v. *Lamar Life Ins. Co.*, 172 So. 495, 500, the word "continue" was defined in the sense that "in its ordinary signification in regard to time periods means to prolong or extend from the end of one time to another time." Thus, the exemption which remained of the 15-years period which began in 1927, and which was being enjoyed by petitioner in December 1931, was extended to, or increased by,

ten years after the expiration of said 15 years in 1942. This and none other, could have been the legislative intent when using said wording.

The decision of the Tax Court should be reversed and, consequently, the order of the Treasurer of Puerto Rico assessing and levying property taxes on the petitioner for the year 1942–43, is also reversed since said properties are exempt from the payment of those taxes until March 31, 1952.

Mr. Justice Snyder and Mr. Justice Córdova did not participate herein.