COMPAÑÍA DE LOS FERROCARRILES DE PUERTO RICO, peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado.

Núm. 56.—*Sometido:* Junio 11, 1945. *Resuelto:* Enero 18, 1946.

*Mariano Acosta Velarde* y *Donald R. Dexter*, abogados de la peticionaria; *Hon. Procurador General Interino Jesús A. González* y *A. D. Marchand Paz, Procurador General Auxiliar*, abogados del interventor, Tesorero de Puerto Rico, querellado en el pleito principal.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Expedimos el auto en este caso para revisar la decisión dictada por el Tribunal de Contribuciones de Puerto Rico declarando sin lugar la apelación establecida por la peticionaria, Compañía de los Ferrocarriles de Puerto Rico, a la cual en lo sucesivo nos referiremos como la peticionaria, contra la resolución del Tesorero de Puerto Rico tasando e imponiendo a la peticionaria $156,055.54 en concepto de contribuciones sobre la propiedad para el año fiscal 1942–43. Los hechos son los siguientes:

Por ley aprobada el 4 de febrero de 1902 (Leyes de 1902, pág. 84) (¹) la Legislatura de Puerto Rico concedió a la peticionaria una exención del pago de toda clase de contribuciones por un período de 25 años, siempre que se comprometiera a transportar gratis durante dicho término a los miembros de la fuerza militar o de la Policía Insular mientras

___

(¹) Edición en inglés.

estuvieren en el desempeño de sus funciones oficiales. Esta exención empezó a regir el 31 de marzo de 1902 y expiraba, por tanto, el 31 de marzo de 1927.

El 7 de mayo de 1927 (Leyes de 1927, pág. 607) la Legislatura aprobó la Resolución Conjunta núm. 1 (convertida en ley por el Congreso de los Estados Unidos a virtud de H. R. 10652, aprobada el 16 de junio de 1938) concediendo a la peticionaria una exención del pago de toda clase de contribuciones, exceptuando la contribución sobre ingresos y la cuota correspondiente a virtud de la Ley de Indemnizaciones a Obreros, por un período de quince años "a contar desde la fecha en que venció el período de exención" que le fué concedido por la Ley de 1902, siempre que se comprometiera por escrito ante el Gobernador a transportar gratis tanto a los miembros de las fuerzas militares y a los de la Policía Insular como a las tropas e impedimenta de la Guardia Nacional de Puerto Rico, a los dementes pobres que tuvieran que ingresar en el Manicomio Insular, a los asilados de la Escuela Correccional de Mayagüez y a los de los Asilos de Niños y Niñas del Gobierno Insular, a los presos, y al ganado y toda otra propiedad de El Pueblo de Puerto Rico que se utilizara para el fomento agrícola de la Isla. Se dispone además que esta exención cesará "desde el momento en que la Comisión de Servicio Público declarare, previa investigación que hiciere de la Compañía de los Ferrocarriles de Puerto Rico, que el capital de ésta, realmente invertido en el negocio, produce una utilidad líquida de un ocho (8) por ciento anual, por lo menos."

Habiendo cumplido la peticionaria con los requisitos exigidos la nueva exención concedida se retrotrajo a la fecha en que venció la exención anterior, es decir, al 31 de marzo de 1927, y continuó por quince años que vencieron el 31 de marzo de 1942.

Ahora bien, el 26 de julio de 1921 (Leyes de 1921, pág. 747), la Legislatura aprobó la Ley núm. 90 titulada "Para

autorizar al Comisionado del Interior a proceder al estudio y construcción de las líneas férreas necesarias para empalmar las líneas actuales de carácter público en la región oriental de Puerto Rico; para adquirir por compra, arrendamiento o expropiación forzosa, cualquier propiedad necesaria al objeto de esta ley y para eximir del pago de contribución a cualquier compañía que construya y explote cualquier sección o trozo de ferrocarril de los especificados en esta ley, a fin de establecer una línea de ferrocarril de circunvalación.''

De acuerdo con el artículo 1 de esta ley, uno de los trayectos que tenía que construirse para establecer la línea de ferrocarril de circunvalación era el especificado con la letra ''A'' descrito así:

''Línea que comience en la estación de Carolina de la Compañía de Ferrocarriles de ·Puerto Rico, o sus cesionarios y llegue hasta la estación de Mameyes, de la Fajardo Development Company.''

Por el artículo número 9 de la ley núm. 90, supra, se eximió del pago de contribuciones por diez años a ''. . . cualquier compañía de servicio público que construyere y explotare cualquiera de las líneas especificadas en el referido artículo primero de esta Ley . .''

En el año 1925, no habiéndose efectuado la construcción de las líneas necesarias para completar el llamado ''ferrocarril de circunvalación'' la Legislatura aprobó en julio 18 la Ley núm. 49 (Leyes de 1925, pág. 277), enmendando los artículos 1 y 9 de la Ley núm. 90 de 1921. El artículo 9, enmendado, dice así:

''Artículo 9.—La autorización que por esta Ley se concede al Comisionado del Interior para proceder a la construcción de las líneas férreas enumeradas en el artículo 1 de la presente Ley, no impedirá que todas, cualesquiera o cualquiera de dichas líneas férreas sean construídas y explotadas por cualquier compañía de ferrocarril de carácter público que esté dispuesta y en condiciones de construir todas o cualquiera de dichas líneas o secciones mediante franquicia

concedida por la Comisión de Servicio Público, siempre que tal franquicia sea solicitada dentro del plan ya fijado por la Comisión de Servicio Público, antes que el Comisionado del Interior haya dado comienzo a la construcción de la línea o líneas cuya construcción interese. Y al efecto se faculta al Comisionado del Interior para que haga, a la vez, las necesarias gestiones con el fin de conseguir que cualquier compañía de servicio público construya o explote todas o cualquiera de las secciones o líneas de ferrocarril especificadas en el artículo 1 de esta Ley; *Disponiéndose*, que cualquier compañía de Ferrocarril de Servicio Público *que forme o haya de formar parte del Ferrocarril de Circunvalación, y que actualmente esté exenta del pago de contribuciones, continuará exenta de tales contribuciones por diez años más*, excepto la llamada contribución de ingresos (Income Tax) *tan pronto se verifique el empalme de sus respectivas líneas con cualquiera de las secciones de Oriente, especificadas en los incisos* (a), (b), (c) y (d) *del artículo primero de esta Ley; Y, disponiéndose, además*, que también quedará exenta de la contribución antes expresada cualquiera otra Compañía de Ferrocarril de Servicio Público que construya la línea o líneas que sean necesarias para empalmar con otra cualquiera de las secciones especificadas en el artículo primero de esta Ley, o con cualquiera de las líneas de circunvalación que tienen actualmente por terminales las ciudades de Carolina y Guayama; *Y disponiéndose, además*, que las compañías y líneas de servicio público que por esta sección de la presente Ley quedan exceptuadas del pago de contribución, estarán en el deber de prestar el servicio de transportación gratis o libre de gastos (durante el período de exención) a los oficiales y miembros de la Policía Insular y de fuerzas militares, cuando estén en uniforme y en el desempeño de funciones oficiales, así como a los presos y a los niños de Asilos, pobres de solemnidad, representantes de Instituciones benéficas y caritativas y dementes para su ingreso en el Manicomio Insular; y estarán obligadas, además, a prestar al Gobierno Insular cualquier otra ayuda que éste requiera como necesaria por razones de interés público.

''Toda compañía de ferrocarril de carácter público que obtuviera una franquicia bajo las disposiciones del párrafo anterior, quedará obligada, por la misma franquicia, una vez terminada la construcción de la línea o líneas a que aquélla se refiera, a empalmar la sección o secciones terminadas con las vías de las compañías de servicio público existentes, y dedicarse a un servicio público de transporte de

carga y pasajeros en combinación con los servicios de las compañías existentes de carácter público con cuyas vías queden empalmadas y de acuerdo con las reglas que la Comisión de Servicio Público prescribiere, y toda línea o líneas de servicio público ya existentes y en operación comprendidas dentro del plan general del ferrocarril de circunvalación, según se ha descrito anteriormente, quedará también obligada, por la presente, a empalmar con la sección o secciones de aquellas líneas de servicio público que estuvieren obligadas a conectar con ellas y que llegaren hasta cualquiera de sus líneas terminales." (Bastardillas nuestras.)

En febrero de 1927 la Comisión de Servicio Público concedió una franquicia a la Fajardo Development Company para construir la línea ferroviaria entre Mameyes y Carolina, la cual se terminó en diciembre de 1931 y el día 28 de dicho mes y año la peticionaria empalmó sus líneas en Carolina.

La contención de la peticionaria es que al momento de hacerse dicho empalme ella estaba exenta del pago de contribuciones sobre la propiedad a virtud de la R. C. núm. 1 de 1927 que le extendió la exención a contar del 31 de marzo de 1927 por un término adicional de quince años y el cual venció el 31 de marzo de 1942 y que tiene derecho a disfrutar de los diez años más de exención concedidos por el artículo 9 de la Ley núm. 49 de 1925, supra, y en su consecuencia, que estaba exenta del pago de las contribuciones impuestas por el Tesorero de Puerto Rico para el año fiscal 1942-43 y lo está para los años sucesivos hasta el 31 de marzo de 1952.

El Tribunal de Contribuciones desestimó la apelación de la peticionaria y sostuvo la actuación del Tesorero por el fundamento principal de que la peticionaria no construyó la línea Mameyes-Carolina antes de vencer en 1927 los 25 años de exención concedidos por la Ley de 1902 ni empalmó sus líneas con ese trayecto construído por la Fajardo Development Company hasta el mes de diciembre de 1931 cuando ya

habían vencido dichos 25 años de exención. El Tribunal, en su opinión, interpretó el artículo 9, diciendo:

"Obsérvese bien que en el caso de la 'Compañía de los Ferrocarriles', que estaba exenta del pago de contribuciones al aprobarse la ley de 1925, ella continuaría, o adquiriría el derecho de continuar, exenta tan pronto como, o sea, en el instante en que, se efectuara, *antes de que terminara el plazo de exención de veinticinco años,* el empalme de sus líneas en Carolina o en Guayama con las secciones que había que construir entre Mameyes y Carolina, o entre Humacao y Guayama. Empero cualquiera de las otras compañías que construyera, no importa la fecha en que lo hiciera, cualquiera de las secciones enumeradas en el artículo 1 de la ley, quedaría exenta, por diez años, del pago de contribuciones sobre sus bienes. (Bastardillas nuestras.)

"... Si la 'Compañía de los Ferrocarriles' no quería perder la exención de que disfrutaba, lo único que tenía que hacer, si las otras compañías no lo realizaban antes que ella, *era construir la sección de Carolina a Mameyes, o el trayecto de Guayama a Humacao.* Pero ella no fué diligente. No cooperó en la medida deseable a la construcción o terminación del 'ferrocarril de circunvalación'. Dejó pasar los dos años de exención que le quedaban." (Bastardillas nuestras.)

■ No estamos conformes con esta interpretación limitada del alcance del artículo 9, supra. El Tribunal de Contribuciones lo limita, sin justificación a nuestro juicio, en cuanto a la peticionaria se refiere, al hecho de que ella estaba obligada a construir el ramal Mameyes–Carolina o empalmar sus líneas con dicho ramal si era construído, como lo fué, por otra compañía, *antes* del 31 de marzo de 1927, fecha en que vencía la exención original de veinticinco años de que disfrutaba El primer disponiéndose del artículo 9, supra, dice textualmente que "cualquier compañía de Ferrocarril de Servicio Público que forme parte o *haya de formar parte* del Ferrocarril de Circunvalación y que *actualmente esté exenta* del pago de contribuciones, *continuará* exenta de tales contribuciones *por diez años más* .... tan *pronto se verifique el empalme* de sus respectivas líneas con cualquiera

de las secciones de Oriente, especificadas, etc.'' (Bastardillas nuestras.) No hay limitación alguna de tiempo en cuanto a la fecha en que podía la peticionaria hacer el empalme de sus líneas con las de la sección Mameyes–Carolina construída por la Fajardo Development Company. Los diez años más de exención empezarían a contarse ''tan pronto se verifique el empalme'' si para dicha fecha la compañía de ferrocarril estaba ya exenta del pago de contribuciones, como sin duda alguna lo estaba la peticionaria en este caso a virtud de habérsele concedido en el año 1927 una exención adicional de quince años ''a contar desde la fecha en que venció'' la exención de 25 años concedida en el año 1902, o sea, a contar del 31 de marzo de 1927. En ningún momento desde el 31 de marzo de 1902 hasta el 28 de diciembre de 1931, fecha esta última en que se hizo el empalme, dejó la peticionaria de estar exenta del pago de contribuciones sobre la propiedad. La argumentación del tribunal inferior al efecto de que la exención concedida a la peticionaria en el año 1927 no es una continuación de la otorgada en el año 1902 por el hecho de que la del 1927 no incluye la cuota de indemnizaciones a obreros y la contribución sobre ingresos, no tiene fuerza alguna. En el 1902 no existían ni la una ni la otra y mal podía la Legislatura exonerar a la peticionaria de su pago. Además, el caso de autos sólo envuelve la exención del pago de la contribución sobre la propiedad, exención ésta incluída en ambas leyes.

■ Es de notarse, además, que de acuerdo con el artículo 9, tal y como fué originalmente aprobado por la Ley núm. 90 de 1921, sólo se eximía del pago de contribuciones por diez años a cualquier compañía de servicio público que ''construyere y explotare'' cualquiera de las líneas especificadas en el artículo primero de la ley. Al enmendarse en el año 1925 dicho artículo 9, no sólo se concedió la exención por diez años a cualquier compañía que construyera la línea o las líneas especificadas, sino que expresamente se concedió

una exención de diez *más* a cualquier compañía, "que forme o haya de formar parte del Ferrocarril de Circunvalación" y que estando ya exenta, continuaría gozando de dicha exención por dicho período adicional tan pronto se verificara el empalme de sus líneas con cualquiera de las líneas de Oriente especificadas en la ley. De ahí que se usara la frase "que forme o haya de formar parte del Ferrocarril de Circunvalación."

Esto parece admitirlo el tribunal inferior en su opinión pero limita el plazo en que la peticionaria podía hacer el empalme de sus líneas o construir ella las nuevas líneas para empalmar con las suyas al 31 de marzo de 1927, fecha en que vencía la exención original de veinticinco años de que gozaba la peticionaria. Como hemos dicho antes, nada encontramos en la ley que justifique resolver que ésa fué la intención legislativa.

Por el contrario, si examinamos la exposición de motivos contenida en los Por Cuantos de la Resolución Conjunta núm. 1 de 1927, supra, veremos que se hizo constar lo siguiente:

"Por cuanto, el Congreso Económico trató extensamente este asunto y llegó a la conclusión, después de largos debates y consideraciones, de que la exención de contribuciones, ya concedida a la Compañía de los Ferrocarriles de Puerto Rico, cuyo término está ya vencido, debe continuar por un término igual al que ha venido disfrutando, para facilitarle así su mejor desarrollo y desenvolvimiento, en beneficio del interés público;...."

La Legislatura, en lugar de conceder un término adicional de veinticinco años de exención, recomendado por el Congreso Económico, sólo concedió uno de quince años. Es razonable deducir que su actuación se debió al hecho de que, por la ley de 1925, ya había dispuesto que la peticionaria continuaría exenta por diez años más, tan pronto ella construyera las nuevas líneas o empalmara las suyas con ellas.

En diciembre de 1931 cuando la peticionaria empalmó sus líneas con las construídas por la Fajardo Development Company ella estaba exenta y obtuvo el beneficio de continuar disfrutando de dicha exención por diez años más a los ya concedidos.

No podemos estar conformes con la conclusión del Tribunal inferior al efecto de que aún asumiendo que la peticionaria tuviera derecho a la exención de diez años concedida por la ley de 1925, ese término debe contarse como concurrente con el de quince años concedido por la Resolución Conjunta núm 1 de 1927, es decir, que comenzó en diciembre de 1931 al empalmar sus líneas la peticionaria y expiró en el año 1941. Esta interpretación del disponiéndose del artículo 9, supra, hace caso omiso de la frase "continuará exenta de tales contribuciones por diez años más" y especialmente de las palabras "continuará" y "más."

"Continuar" significa "proseguir uno lo comenzado, durar, extenderse." Y "más" indica "exceso, aumento, ampliación o superioridad en comparación, expresa o sobrentendida." Diccionario de la Lengua Española, 16a. Ed. de la Academia Española.

En *McCain* v. *Lamar Life Ins. Co.*, 172 So. 495, 500, se definió la palabra *"continue"* diciéndose que "en su significación ordinaria en relación con períodos de tiempo, quiere decir prolongar o extender desde la terminación de un período hasta otro." Así, pues la exención del remanente de los quince años que comenzaron en 1927 de que gozaba la peticionaria en diciembre de 1931 se extendió o aumentó por diez años al expirar dichos quince años en 1942. No otra pudo ser la intención legislativa al usar dichas palabras.

*Debe revocarse la decisión del Tribunal de Contribuciones y en su consecuencia la resolución del Tesorero de Puerto Rico tasando e imponiendo contribuciones sobre la propiedad de la peticionaria por el año fiscal 1942–43 por estar dichas*

*propiedades exentas del pago de dichas contribuciones hasta el 31 de marzo de 1952.*

El Juez Asociado Sr. Snyder se inhibió.

El Juez Asociado Sr. Córdova no intervino.