# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### AUGUST 7, 2003 Session

## IRBY C. SIMPKINS, JR. v. PEACHES G. BLANK, formerly Simpkins

**Direct Appeal from the Circuit Court for Davidson County**
**No. 00D - 156      Walter C. Kurtz, Judge**

---

**No. M2002-02383-COA-R3-CV - Filed December 30, 2003**

---

This case involves an appeal from a grant of summary judgment equitably dividing a tax refund of the parties and refusing to reopen the parties' marital dissolution agreement. In addition, appellant contends the trial court erred by awarding attorney's fees to appellee for issues relating to child support litigated below. For the following reasons, this Court affirms the decision of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Rose Palermo, Denty Cheatham, Nashville, TN, for Appellant

Robert J. Walker, Clisby Hall Barrow, Nashville, TN, for Appellee

**OPINION**

**Facts and Procedural History**

On June 22, 2000, a divorce decree was entered by the circuit court of Davidson County dissolving the marriage of Irby Simpkins, Jr. ("Simpkins") and Peaches G. Blank (formerly Simpkins but referred to herein as "Blank"). This decree approved the parties' Marital Dissolution Agreement ("MDA"), settling property, alimony, child custody and child support issues between the parties.

At the time the parties reached a settlement on the terms of the MDA in June 2000, they had not yet filed their joint income tax return for 1999. However, the certified public accountant for the parties, Larry Carter ("Carter"), determined that the parties would have a loss, primarily caused by losses of Simpkins' business, Hendersonville Marine, that could be carried back to a preceding year for a tax refund. Such procedure was not unfamiliar to either Simpkins or Blank because they had used the same method of carrying back losses from the previous year when they filed their 1998 tax

return. For their 1998 return, the parties sustained a loss which was carried back to the taxes paid on the 1996 and 1997 tax returns resulting in a refund.

The joint 1999 tax return of the parties was prepared by Carter and filed on October 15, 2000, after the parties had already drafted their MDA. The parties did not elect to carry the loss forward, making the loss available to claim a refund for their 1997 tax return. Carter subsequently prepared a Form 1045 Application for Refund to amend the parties' 1997 tax return. The refund on the application was $191,935 ("1997 Tax Refund"). Carter attempted to obtain Blank's signature before the December 31, 2000, deadline but was unsuccessful. As a result, the Kraft Brothers accounting firm prepared a Form 1040X to obtain the refund and requests were made of Blank to sign this form to obtain the refund. Blank never signed the Form 1040X and left the issue with her attorneys and accountant.

Finally, Simpkins, believing the money to be his under the provisions of the MDA relating to tax refunds of the parties, directed one of his employees, Claudia Allison, who held a written authorization from Blank to use a stamp bearing Blank's signature, to stamp the necessary form. A refund check was received by Simpkins and he again directed Allison to use Blank's signature stamp to indorse the check. Simpkins deposited this refund check into his account in May 2001.

In addition, this case involves an investment Blank made during the course of the marriage in an entity known as Privatized Management Service Investors, LLC ("PMSI").[1] The cost of Blank's investment in PMSI was $500,000. Blank, during the course of the divorce, produced a copy of the check dated December 16, 1998, in the amount of $500,000. This investment was sold for over two million dollars after the MDA was entered into and the divorce decree issued. Simpkins, however, testified under deposition that Blank made representations to him that the PMSI investment was worth only $50,000.

In addition to the events above, after the divorce, Simpkins became alienated from his adopted daughter, Raleigh Anne Simpkins ("Raleigh Anne"). Raleigh Anne is the natural daughter of Blank and her previous husband, Ed Blank, who died when Raleigh Anne was three years old.

In response to the above events, Simpkins filed a petition to enforce the final decree of divorce on July 17, 2001. In his petition, Simpkins asked the trial court to suspend his child support and private school obligations of the MDA until such time when Blank would encourage Raleigh Anne to have a relationship with him. Additionally, Simpkins asked the trial court to declare his entitlement to the entire 1997 Tax Refund. Finally, Simpkins requested the trial court to reopen the MDA's property division based on allegations of fraud by Blank when she allegedly misrepresented the value of the PMSI stock investment. Simpkins later amended his petition, retracting his request for suspension of his child support obligations under the MDA during Raleigh Anne's minority and requesting the trial court terminate his obligations to Raleigh Anne during her majority including

---

[1]     Appellant Simpkins also raises the fact that his adopted daughter, Raleigh Anne Simpkins, also made an investment in PMSI, however, this Court sees no reason to discuss this issue.

expenses for her college education. A hearing was held on the child support and visitation issues on April 26, 2002, and the trial court ordered that Raleigh Anne would meet with Simpkins at least twice a month, while leaving the parties free to schedule any additional visitation.

On May 30, 2002, Blank filed a motion for summary judgment on the issues of the 1997 Tax Refund and the PMSI stock owned by Blank. The trial court granted Blank's motion, refusing to reopen the MDA on the basis that Blank misrepresented the value of the PMSI stock and dividing the 1997 Tax Refund between the parties with Blank receiving 65% and Simpkins receiving 35% of the 1997 Tax Refund. On September 5, 2002, Blank filed a motion to recover the attorney's fees she incurred in connection with Simpkins' attempt to terminate his child support obligations, while Simpkins similarly filed a motion to recover his legal expenses in November 2002. After taking affidavits from both parties, the trial court issued an order granting Blank an award of attorney's fees in the amount of $18,500 and denying Simpkins the recovery of any fees. Simpkins appealed both orders, which were consolidated in this appeal, and presents the following issues for this Court's review:

I.      Whether the trial court erred when it found the 1997 Tax Refund was outside of the parties' MDA and, if not, whether it properly divided the refund awarding Blank 65% and Simpkins 35%;

II.     Whether the trial court erred in granting summary judgment on the issue of the PMSI stock despite the allegations that Blank misrepresented the value of the stock to Simpkins;

III.    Whether the trial court abused its discretion by awarding Blank $18,500 in attorney's fees.

For the following reasons, we affirm the decision of the trial court.

## Standard of Review

The standard of appellate review for a grant of summary judgment is *de novo* without a presumption that the trial court's conclusions were correct. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001) (citing *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000)). When a court considers a motion for summary judgment, it should view the evidence "in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993)). "Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion." *Id.* (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)).

The interpretation of a written contract, including a marital dissolution agreement, is a matter of law and this Court reviews such questions *de novo* affording the trial court's conclusions no presumption of correctness. *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998)

(citing *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)). Awards of attorney's fees pursuant to Tenn. Code Ann. § 36-5-103(c) (2003) are within a trial court's discretion and, therefore, this Court reviews such an award under an abuse of discretion standard of review. *Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn. Ct. App. 1983) (citing *Grant v. Grant*, 286 S.W.2d 349, 350 (Tenn. Ct. App. 1954)).

### The 1997 Tax Refund

Appellant Simpkins first argues the trial court erred when it decided that the 1997 Tax Refund did not fall within the scope of the MDA between the parties. "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (citing *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955)). Courts are to enforce a contract according to its plain terms, and the language in a contract must be understood in its plain, ordinary and popular sense. *Id.* (citing *Eleogrammenos v. Standard Life Ins. Co.*, 149 S.W.2d 69 (Tenn. 1941); *Guardian Life Ins. Co. v. Richardson*, 129 S.W.2d 1107 (Tenn. Ct. App. 1939)). A marital dissolution agreement which acts as a property settlement between a husband and wife should be construed and interpreted like all other contracts. *Gray v. Estate of Gray*, 993 S.W.2d at 63 (citing *Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993); *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. Ct. App. 1990)). The Tennessee Supreme Court has also cited with approval this proposition from the Restatement of Contracts:

> In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into–not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement.

*Restatement of Contracts*, § 235(d).

The MDA between the parties discusses tax refunds in a select few paragraphs. First, in paragraph 18, it states the following:

> 18. **TAX REFUND**. The parties' 1996 Federal income tax refund, their 1997 Federal income tax refund, and their North Carolina state income tax refund shall be awarded to Husband, free and clear of claims by Wife. These refunds have previously been deposited into an interest bearing escrow account in Husband's name by agreement between the parties' counsel. Husband shall be awarded the entire balance of this account. The balance of this account at the present time is approximately $413,000.

Paragraph 20 of the MDA further states:

-4-

20. **TAX FILINGS**. The parties shall file a joint tax return for the 1999 tax year. The parties shall share pro rata, based on income, any additional tax obligation owed for 1999. Husband shall be awarded the refund, if any, due upon the filing of the return. Husband shall assume responsibility and liability for all tax obligations, including penalties and interest, which are owed by them or which may be thereafter imposed upon them for tax years in which they file or have filed joint federal and/or state income tax returns.

Paragraph 25 of the MDA provides that such agreement is intended to be a "final settlement of all property rights and support rights and obligations of the respective parties." Finally, Paragraph 34 of the MDA states that "[t]he only joint debts or joint potential financial obligations, if any, owed by the parties are those related to their joint tax returns, for which Husband shall assume responsibility and liability." We hold that the plain language of this MDA does not account for a refund due to an amendment of the parties' 1997 joint income tax return.

First, Simpkins argues the trial court erred by failing to consider all the provisions of the contract together. Instead, Simpkins asserts, the trial court focused on paragraph 18 of the MDA to find that the 1997 Tax Refund is without the MDA. Though the trial court, at the hearing on this matter, does specifically mention paragraph 18, it also states that the 1997 Tax Refund is "not within the contemplation of the Marital Dissolution Agreement" evidencing the trial court's consideration of the agreement as a whole.

Even assuming, arguendo, that the trial court did not consider the contract as a whole, this Court reaches the same conclusion upon examination of the entire MDA. Paragraph 18, though it does state that Simpkins is to receive the parties' 1997 federal income tax refund, further describes this refund later in the paragraph as part of the balance of the interest bearing escrow account. Paragraph 18 states "these refunds," in reference to the 1996 tax refund, 1997 tax refund and the North Carolina state tax refund, are presently in an account in the amount of $413,000. Next, Paragraph 20 states that Simpkins shall be awarded the refund, if any, due upon the filing of the 1999 return. In its plain terms, this means that Simpkins was entitled to any tax refund from filing a joint 1999 return. However, in this case, no refund was due upon the filing of the 1999 tax return. Here, the 1999 tax return only yielded a loss that Simpkins could carry forward or back. The refund at issue in this case was due upon filing an *amended 1997 tax return* and not the 1999 return. Though it is true that Simpkins is saddled with the liability of any tax obligations of the parties, this does not necessarily mean, conversely, Simpkins was intended to enjoy all the benefits. Finally, we recognize the MDA between the parties was meant to be a final property settlement. However, by its nature, an MDA is meant to be a final settlement of the property of the marriage. This provision does not require this Court to find that an item of marital property, that arose after the MDA was written, is within the MDA's scope.

Appellant Simpkins also argues that the trial court erred by failing to consider the circumstances surrounding the MDA when it interpreted the contract. Upon our review of the record, we find no merit in this argument. Simpkins relies on testimony by the parties' accountant,

Larry Carter, who stated in his affidavit that, prior to the drafting of the MDA, the parties had utilized the use of a carry-back loss the year before for their 1998 tax return and were familiar with this method of obtaining a refund. Carter also stated that he had informed Blank prior to the drafting of the MDA that Simpkins' business, Hendersonville Marine, was "hemorrhaging" and would allow the parties to carry-back their losses as they had done before. Therefore, as Simpkins argues, the parties meant to include any refund obtained by utilizing a carry-back loss when the MDA states that "[t]he parties shall file a joint tax return for the 1999 year" and "Husband shall be awarded the refund, if any, due upon the filing of the return." We hold that Appellant Simpkins seeks to enlarge the terms of the MDA rather than aid in determining its meaning with this argument and, therefore, this argument must fail. By its plain terms, the MDA, in paragraph 20, considers the refund from the joint 1999 tax return only and mentions neither a refund as a result of a carry-back loss nor a refund from an amended 1997 tax return. If Simpkins and Blank were aware that such a loss and refund was imminent, it stands to reason that the parties in the MDA would have stated in plain terms who was entitled to this amount. Therefore, we affirm the trial court's interpretation of the MDA and now turn to the question of whether the court below abused its discretion in its division of the tax refund.

Appellant Simpkins argues the trial court erred by reopening the MDA when it awarded Blank a portion of the 1997 Tax Refund. While it is true that normally, as our Supreme Court stated in *Johnson v. Johnson*, 37 S.W.3d 892, 897 (Tenn. 2001), there cannot be a post judgment modification of an MDA, as we stated above, this tax refund is not included in the MDA and, therefore, the court below was not modifying the terms of that agreement.

Simpkins also argues that the trial judge erred when it considered his unauthorized use of Blank's signature stamp in violation of Tenn. Code Ann. § 36-4-121 (2003) which states that a trial court must equitably divide the marital property "without regard to marital fault in proportions as the court deems just." The use of the signature stamp by Simpkins was not the fault that led to the dissolution of the marriage in this case and, therefore, we hold the trial court did not err on this basis.

Finally, Appellant Simpkins argues the trial court abused its discretion by awarding 65% of the 1997 Tax Refund to Blank, leaving him only 35%. Specifically, Simpkins argues that the trial court failed to equitably divide the 1997 Tax Refund and instead only focused on the fact that Simpkins used Blank's signature stamp without Blank's authorization. Upon our review of the record, we find this argument to be without merit. First, we are reminded that an equitable distribution does not necessarily mean an *equal* distribution. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998)). While it is true that the trial court did consider Simpkins' unauthorized use of Blank's signature stamp to sign the amended tax return, the letter for the address change, and the tax refund check, nothing in Tenn. Code Ann. § 36-4-121(c) (2003) precludes the trial court from considering such an act. That statute directs courts to consider all "relevant factors" and then proceeds to list those factors which are included. Tenn. Code Ann. § 36-4-121(c) (2003). In addition, at the conclusion of the July 12, 2002, hearing, the trial court stated that it considered division of the tax refund "in light of the division of the whole marital property in this case." Given the wide discretion afforded trial courts

in property divisions, Appellant Simpkins is unable to persuade us that reversal is proper. After reviewing the record, this Court holds that the trial court did not abuse its discretion by awarding Blank 65% of the 1997 Tax Refund.

**The PMSI Stock**

Appellant Simpkins next argues that the trial court erred when it denied him the opportunity to reopen the MDA when there was evidence that Blank had misrepresented the value of one of her assets: the PMSI stock. We begin by noting that Simpkins was unable to pursue this action under Rule 60.02(2) of the Tennessee Rules of Civil Procedure because he filed his petition more than one year after the final divorce decree. Therefore, Simpkins brought this as an independent action to set aside a judgment based on fraud. In such an independent action, the complaining party must prove extrinsic, rather than intrinsic, fraud. *New York Life Ins. Co. v. Nashville Trust Co.*, 292 S.W.2d 749 (Tenn. 1956). Prior to the adoption of Rule 60.02(2), one complaining of intrinsic fraud was required to prove such fraud at trial, in a motion for a new trial, or on appeal. *Noll v. Chattanooga Co., Ltd.*, 38 S.W. 287, 290-91 (Tenn. Ct. Ch. App. 1896); *Schorr v. Schorr*, No. 02A01-9409-CH-00217, 1996 WL 148613, at *3 (Tenn. Ct. App. March 29, 1996). Rule 60.02(2) alleviated the harshness of the common law rule by allowing complainants a year after a final judgment to set such judgment aside for intrinsic fraud. Tenn. R. Civ. Pro. 60.02(2). Extrinsic fraud, on the other hand, has never required proof at the initial trial or its appeal. The reasoning for this difference in treatment lies in the distinction between these two types of fraud.

Extrinsic fraud concerns conduct extrinsic or collateral to the issues decided in a case. *Schorr*, 1996 WL 148613, at *3 (quoting *Thomas v. Dockery*, 232 S.W.2d 594, 598 (Tenn. Ct. App. 1950)). "[E]xtrinsic fraud involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." *Noles v. Earhart*, 769 S.W.2d 868, 874 (Tenn. Ct. App. 1988). "[I]ntrinsic fraud is fraud within the subject matter of the litigation, such as forged documents produced at trial or perjury by a witness." *Schorr*, 1996 WL 148613, at *3 (citing *Dockery*, 232 S.W.2d at 598).

Because intrinsic fraud involves the subject matter of the litigation, the initial trial is the complainant's opportunity to expose the wrong. As the Tennessee Court of Chancery Appeals has stated:

> [W]hen [a complainant] has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence; and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue.

*Noll*, 38 S.W. at 291. The complainant has the opportunity to cross examine the fraudulent witness or present contradictory evidence of his own. Though this may end in harsh results, it is balanced against the prevention of a greater evil: "[e]ndless litigation, in which nothing [is] ever finally

determined." *Id.* Extrinsic fraud, however, is such that the complainant was not afforded a "fair and honest opportunity" to present his evidence in a proceeding. *New York Life Ins. Co.*, 292 S.W.2d at 753. Examples of this type of fraud include false promises of compromise, keeping a party ignorant of the suit, or where an attorney pretends to serve the interests of one party when he is serving the other or sells out his client's interests. *Noll*, 38 S.W. at 291 (citing *U.S. v. Throckmorton*, 98 U.S. 61, 66 (1878)). Unlike perjured testimony, this type of fraud cannot be rebutted by contradictory evidence or cross examination. For this reason, extrinsic fraud is a permissible independent action to overrule a final judgment.

In this case, Simpkins asserts that Blank fraudulently misrepresented the value of her PMSI stock, which is Blank's separate property. Therefore, as Simpkins argues, the trial court erred when it refused to reopen the final divorce decree to reevaluate the property settlement between the parties. We cannot agree. In the parties' final divorce decree and during the divorce proceedings, the value of the property of the parties and its division was certainly at issue. Simpkins knew of the PMSI stock and had an opportunity to investigate its value. Therefore, such fraud is intrinsic, rather than extrinsic, and the only method by which Simpkins could bring an action to set aside the final divorce decree would be pursuant to Rule 60.02 rather than in an independent action. As we noted above, Simpkins was beyond the one-year limitation period. For this reason, we affirm the trial court's grant of summary judgment to Blank on the issue of the PMSI stock.

### Attorney's Fees

Finally, Appellant Simpkins argues that the trial court abused its discretion when it awarded Appellee Blank $18,500 in attorney's fees incurred defending the divorce decree for child support. Tenn. Code Ann. § 36-5-103(c) (2003) states:

> [T]he spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

The burden of proof to determine what a reasonable attorney fee is rests with the party demanding the fees, and if a trial court is prepared to set a fee amount without first hearing the demanding party's proof, the defending party "must be accorded full opportunity to cross examine [the demanding party's] witness and present evidence on that issue." *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). However, the defending party must request the opportunity to cross examine such witnesses or offer proof of his own. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

As noted above, we review the trial court's award of attorney's fees under an "abuse of discretion" standard. Under such review, a trial court's decision will be upheld if not clearly unreasonable and reasonable minds can disagree about the decision's correctness. *Roberts v. Sanders*, No. M1998-00957-COA-R3-CV, 2002 WL 256740, at \*14 (Tenn. Ct. App. Feb. 22, 2002) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State of Tenn. v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)). A trial court abuses its discretion when it "applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citing *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000); *In re Paul's Bonding Co.*, 62 S.W.3d 187, 194 (Tenn. Crim. App. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

First, Appellant Simpkins argues that Appellee Blank was not entitled to attorney's fees under Tenn. Code Ann. § 36-5-103(c) (2003) because he was seeking only to enforce his visitation time with Raleigh Anne and merely, as a form of relief, prayed the trial court to suspend his child support obligation until such time as Blank would facilitate and encourage such a relationship. We disagree. Though Appellant may have sought to improve his relationship with Raleigh Anne, in his petition he sought to suspend child support payments to coerce Blank into encouraging the father/daughter relationship. As a result, Blank was required to defend against this petition in order to prevent the suspension of such child support owed by Simpkins. Had Blank not defended against this action, Simpkins may have obtained this suspension. Therefore, we cannot say that the trial court abused its discretion when it found that Appellee Simpkins was entitled to an award of attorney's fees.

Next, Appellant argues that he should have been given the opportunity to cross examine Blank's witnesses and present proof on the issue of the reasonableness of the attorney's fee award. However, at a hearing on November 1, 2002, counsel of Simpkins agreed to the submission of affidavits to the trial court as a method of proof. Therefore, the trial court did not err by refusing to hold a formal hearing on this issue.

Finally, Appellant contends that there is no proof to justify an award of $18,500 in attorney's fees to Appellee Blank. Before the trial court was an itemized list of all fees related to defending against the Appellant's suspension of child support petition, affidavits of attorneys stating the reasonableness of the fees charged by Appellee Blank's attorneys, the amount of fees charged by Appellant's counsel, and copies of Appellee Blank's bills with certain redactions relating to issues other than the child support/visitation issue. After our review of the record, this Court cannot say the trial court abused its discretion when it awarded Appellee Blank $18,500 in attorney's fees and accordingly affirm its award.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court.  Costs are judged against Appellant, Irby Simpkins, and his surety, for which execution may issue if necessary.

 

_____
ALAN E. HIGHERS, JUDGE